**STRATOS MOBILE NETWORKS USA, LLC, Plaintiff–Appellee,**

v.

**UNITED STATES, Defendant–Appellant,**

and

**COMSAT Corporation, Defendant–Appellant.**

**Nos. 00–5023, 00–5024.**

United States Court of Appeals, Federal Circuit.

May 26, 2000.

Thomas P. Barletta, Steptoe & Johnson LLP, Washington, DC, argued for plaintiff-appellee. With him on the brief were Peter Wellington and Paul Hurst.

Michael S. Dufault, Trial Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, Washington, DC, argued for defendant-appellant United States. With him on the brief were David W. Ogden, Acting Assistant Attorney General, David M. Cohen, Director, and Harold D. Lester, Jr., Assistant Director. Of counsel was Amy J. Weisman, Attorney, Department of the Navy, Office of Counsel, San Diego, California.

Frederick W. Claybrook, Jr., Crowell & Moring LLP, Washington, DC, for defendant-appellant COMSAT Corporation. With him on the brief was Thomas P. Humphrey. Of counsel was David Z. Bodenheimer.

Before MAYER, Chief Judge, PLAGER and LOURIE, Circuit Judges.

MAYER, Chief Judge.

The United States and COMSAT Corporation ("COMSAT") seek review of the judgment of the United States Court of Federal Claims, *Stratos Mobile Networks USA, LLC v. United States*, 44 Fed.Cl. 633 (1999), concluding that the Navy's solicita-

tion of Contract No. N00039–99–D–3201 was improperly conducted and ordering injunctive relief. By our order of December 30, 1999, we granted expedited review because of potential national security concerns. Because the Court of Federal Claims erred in finding a latent ambiguity in the contract, we reverse the judgment and vacate the injunction.

*Background*

On March 1, 1999, the Department of the Navy's Space and Naval Warfare Systems Command (Navy) issued a request for proposals (RFP) for an indefinite-delivery, indefinite-quantity (IDIQ) contract to procure leased-channel-mode, high-speed, satellite-based communication services through the International Maritime Satellite (INMARSAT) B high-speed data service. Section V of the RFP, entitled "Evaluation," informed bidders that "[t]he Government will award a contract ... to the responsible offeror whose offer conforming to the solicitation ... will be most advantageous to the Government, price and other factors considered," and that the "[a]ward will be made to the offeror whose proposal meets the minimum technical requirements and offers the best value to the Government in terms of combination of past performance and price." The RFP states that "[*p*]*rice* will be evaluated using the anticipated order amounts which follow." However, potential bidders were also informed that "[o]fferors are cautioned that evaluation of the [anticipated] quantities does *NOT* obligate the Government to place orders in that manner. The Government is obligated to order only the minimum quantity...." The RFP also instructs that "[i]n the price evaluation, the Government will apply any discounts offered as applicable." Specific examples of discounts were provided, all of which were "without regard to the number of channels ordered" or "without regard to the number of months funded by the Government."

In addition to the anticipated quantities, the RFP specified a not-to-exceed quantity and informed bidders that

[p]rices will also be evaluated for reasonableness using the items' not-to-exceed quantities.... In considering the reasonableness and realism of the price proposals, the Government may determine that an offer is unacceptable if the prices proposed are materially unbalanced between line items. An offer is materially unbalanced when: one, it is based on prices significantly less in cost for some work and prices that are significantly overstated in relation to the cost for other work; and two, if there is reasonable doubt that the offer will result in the low overall cost to the Government even though it may be the lowest evaluated offer, or it is so unbalanced as to be tantamount to allowing an advance payment.

Stratos Mobile Networks USA, LLC ("Stratos") and COMSAT submitted proposals in accordance with the RFP. Both COMSAT and Stratos satisfied the RFP's technical requirements, and the past performance evaluation resulted in excellent weighted average past performance scores for both companies. Both companies offered discounts in their proposals, and, as the Court of Federal Claims observed:

These discounts, however, were structured differently. In general terms, Stratos' per-unit price discounts would become available only after the Navy had built up a specified channel-month ordering total, found by multiplying the number of channels ordered by the months in service. In order to receive credit toward these cumulative totals, the Navy was required to place orders each month for a number of channels that matched or exceeded the number of channels specified for that month in the solicitation's anticipated order quantities. A failure to order the prescribed minimum quantity in the specified

month resulted in the resetting of the cumulative channel months to zero and thus caused a delay in reaching the channel-month level necessary for discount. Stratos' discount, in other words, was tied to an exact replay of the solicitation's anticipated order amounts. In contrast, COMSAT, following an example set forth in the solicitation, offered a discount for any channel quantity when ordered for a 12–month period. COMSAT's discount thus depended only on the duration of an order, and operated without regard to the number of channels ordered, or to the month of an order's placement.

*Stratos Mobile Networks,* 44 Fed.Cl. at 637.

After receiving the initial proposals, the Navy sought clarification of outstanding questions, including some directly related to the Stratos pricing proposal. Stratos was informed that its "proposal's potential for award could be enhanced if it were more price competitive," and was later asked to clarify whether discounts would be available if service started in a month with thirty active channels but ended in a month with less than thirty active channels, whether discounts "kick in" after lease months are completed versus ordered, and was informed that the Navy would not prepay for services as initially required by Stratos to earn discounts. After Stratos submitted a revised proposal, the Navy responded with a letter stating that:

> ... it appears that the discounts you are offering ... apply to the exact anticipated quantities included in the RFP for price evaluation. Although the price evaluation quantities constitute a reasonable estimate of future order quantities, it is impossible to predict exact order quantities over the five-year ordering period. Accordingly, the RFP advised that evaluation of the anticipated order amounts would not obligate the Government to place orders in that manner. Consequently, we are seeking confirmation/clarification with regard to the discounts you have offered in your 21 April 1999 proposal revision.

The Navy then asked a series of questions to determine whether discounts would be available for additional service requested in a month beyond the number of channels specified in the price evaluation quantities, for orders placed in a different month than specified in the price evaluation quantities, and for channels ordered for less than a twelve month period. The Navy also questioned when the volume discounts based on the number of channel months would become effective and whether discounts were dependent on the order being placed in the month specified in the price evaluation quantities. Stratos submitted a final proposal which responded that (1) discounts are not available for quantities above the anticipated amount, (2) ordering service one month later than the anticipated evaluation schedule would reset the discount level to zero channel months, (3) the discount schedule is tied to both the month of order and the aggregate number of channel months ordered and cannot be accelerated by ordering additional services before they are scheduled in the anticipated evaluation schedule, (4) obligating for six month periods versus one year periods does not affect the discount schedule so long as the number of leases planned to be procured in any month under the anticipated evaluation schedule is met, and (5) the discount plan is based on completed months of service and not the month of order.

Based on the final proposals submitted by each company, the prices for the evaluated quantity were $65,254,030 for COMSAT and $64,221,920 for Stratos, while COMSAT bid $111,951,000 compared to $126,100,800 for Stratos for the not-to-exceed value. The Navy awarded the contract to COMSAT based on the its percep-

tion that COMSAT's pricing was more flexible and thus more accommodating of the uncertainties of demand associated with an IDIQ contract. Specifically, the Navy justified the award to COMSAT because (1) COMSAT's monthly undiscounted per channel price was $3350 lower than Stratos', (2) Stratos' lower overall evaluated quantity price was entirely dependent upon the government ordering channels in the same months and in the same quantities as called for in the anticipated evaluation schedule while COMSAT's discounts were not directly tied to placing orders in the anticipated manner, (3) arduous restrictions applied to Stratos' pricing which was only lower under very limited conditions unlikely ever to materialize, (4) COMSAT's discount terms were more advantageous to the government because they were not tied to a requirement to have a specific number of leases in place in a specific month, and (5) considering each offer as a whole, it was more advantageous to award the contract to COMSAT at a not-to-exceed value that is $14,149,800 less than Stratos rather than to award the contract to Stratos whose offer was only $1,032,110 less than COMSAT's offer for the anticipated evaluation quantities.

Stratos challenged both aspects of the Navy's evaluation process in the United States Court of Federal Claims, arguing that COMSAT's past performance did not warrant an excellent rating and, further, that the Navy did not follow the RFP's direction to evaluate prices strictly based on the anticipated order amounts set out in the RFP for price evaluation purposes. COMSAT intervened. The Navy and COMSAT argued that the award of the contract to COMSAT was appropriate because the RFP provided that the Navy would also evaluate price reasonableness and realism and the likelihood that the evaluated price would be the most advantageous to the government.

Based on these conflicting interpretations of the price evaluation criteria, the Court of Federal Claims granted summary judgment for Stratos, holding that the procurement was illegal because the RFP contained a latent ambiguity as to the method of evaluating bids. The Navy emphasized the potential risks to national security that would be posed if it were forced to rebid the contract and . if it had to transition service from COMSAT to Stratos in the middle of the five-year contract period. The trial court concluded that it was in the interest of national security that the Navy have both continuous, uninterrupted access to the INMARSAT–B high speed data communications and guaranteed access to the requisite number of communications channels. Nevertheless, it issued an injunction requiring the Navy to rewrite the RFP, rebid the contract, and transition the contract to Stratos by January 1, 2001 if Stratos won the rebid.[1] In formulating the injunction, the court discounted the national security threat posed by a forced service transition, but sought to mitigate any such harm by delaying any transition to permit an expedited appeal, which is now before us.

### Discussion

■ We review the grant of summary judgment *de novo*. *Prineville Sawmill Co., Inc. v. United States*, 859 F.2d 905, 911 (Fed.Cir.1988) ("[T]his court determines for itself whether the standards for summary judgment have been met."). We review the grant of a permanent injunction for an abuse of discretion which "requires plenary review of the correctness of ... rulings on matters of law." *Intergraph Corp. v. Intel Corp.*, 195 F.3d 1346, 1351 (Fed.Cir.1999). Within that context, the decision of an agency to award a contract must be upheld unless it is found to be "arbitrary, capricious, an abuse of discre-

---

1. Stratos was awarded the IDIQ contract from January 2001 to June 2004 under the

second round of price evaluations conducted in accordance with the injunction.

tion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A) (1994). "To prevail in a bid protest, a protester must show a significant, prejudicial error in the procurement process." *Alfa Laval Separation, Inc. v. United States,* 175 F.3d 1365, 1367 (Fed.Cir.1999) (citations omitted). "[T]he protester must show 'that there was a substantial chance it would have received the contract award but for that error.'" *Id.* (quoting *Statistica, Inc. v. Christopher,* 102 F.3d 1577, 1582 (Fed. Cir.1996)).

■■■ The RFP, like any contract, must be read in light of its purpose and consistently with common sense. *See Dalton v. Cessna Aircraft Co.,* 98 F.3d 1298, 1305 (Fed.Cir.1996). Both the existence of an ambiguity and whether any ambiguity is patent or latent are issues of law that we review *de novo. Grumman Data Sys. Corp. v. Dalton,* 88 F.3d 990, 997 (Fed.Cir. 1996). The RFP states that *"[p]rices* will be evaluated using the anticipated order amounts which follow...." Stratos argues this can only reasonably be interpreted to mean that the anticipated order amounts constitute the sole basis for comparing the prices of various bids. COMSAT and the Navy point to language in the same section of the RFP stating that prices will also be evaluated for reasonableness using the not-to-exceed quantities and authorizing the Navy to consider an offer unacceptable because it is materially unbalanced "if there is reasonable doubt that the offer will result in the lowest overall cost to the Government even though it may be the low evaluated offer...." The RFP also makes clear that "[t]he Government will award a contract... to the responsible offeror whose offer ... will be most advantageous to the Government, price and other factors considered.... Award will be made to the offeror whose proposal ... offers the best value to the Government in terms of combination of past performance and price."

The RFP warned that the anticipated order amounts were for evaluation purposes only and did not bind the Navy to order more than the minimum requirements. These terms of the RFP provided substantial guidance that would put the reasonable contractor on notice that the evaluation would include more than a simple comparison of price calculations at a single data point, would "apply any discounts offered as applicable," and would consider whether the offer would be most advantageous to the government. Stratos' interpretation unreasonably expects the Navy to look no further than the single data entry for evaluated price and to ignore the fact that its discount scheme, in the Navy's words, provides lower prices *"under very limited conditions which place restrictions that are so arduous that the* pricing offered by Stratos for the evaluation quantity is likely to never materialize due to the discount terms." The Navy's evaluation of the competing bids shows that "there is reasonable doubt that [Stratos'] offer will result in the lowest overall cost to the Government even though it may be the low evaluated offer...." The very purpose of an IDIQ contract is to provide flexibility for requirements that cannot be accurately anticipated.

■■■ The government did not intend that the evaluated pricing schedule be the exclusive means of evaluation. Stratos points to no provision in the RFP that expressly mandates the use of the anticipated evaluation schedule to the exclusion of other factors. Even assuming the reasonableness of Stratos' interpretation that it is an exclusive provision, COMSAT's contrary interpretation is at least equally reasonable. The solicitation would then at most be ambiguous. *Grumman Data,* 88 F.3d at 997 ("If more than one meaning is reasonably consistent with the contract language, then the contract term is ambiguous."). If Stratos' claims of ambiguity

among the evaluation terms are correct, the ambiguity would be patent and not latent. A patent ambiguity is present when the contract contains facially inconsistent provisions that would place a reasonable contractor on notice and prompt the contractor to rectify the inconsistency by inquiring of the appropriate parties. Thus, Stratos "had a duty to seek clarification from the government, and its failure to do so precludes acceptance of its interpretation." *Statistica,* 102 F.3d at 1582.

 The Court of Federal Claims said that "[i]nsistence upon a literal application of the price evaluation clause, ... is complicated by other seemingly contradictory aspects of the solicitation." *Stratos Mobile Networks,* 44 Fed.Cl. at 638. "We read the language of a particular contractual provision in the context of the entire agreement ... and construe the contract so as not to render portions of it meaningless." *Dalton,* 98 F.3d at 1305. The RFP terms thought by the Court of Federal Claims to support a conclusion of latent ambiguity are not mutually exclusive, are included within the same "Evaluation" section of the RFP, and clearly delineate the factors that will be considered in determining which is the most advantageous offer to the Navy. While the anticipated quantities are to be used to determine an evaluated price for comparing the bids, nothing in the RFP makes that consideration exclusive, and the RFP makes clear that the lowest evaluated offer need not be accepted "if there is reasonable doubt that the offer will result in the lowest overall cost to the Government even though it may be the low evaluated offer...."

The Navy's award of the contract to COMSAT was not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, considering its $14,-189,800 lower not-to-exceed quantity price point and greater flexibility in offering discounts not tied to a specific number of leases in place in a specific month which was more advantageous to the government than Stratos' restrictive discounts and $1,032,110 lower evaluated price. Based on the nature of the IDIQ contract and the specific terms of the RFP, there was no ambiguity in the RFP, latent or otherwise, and therefore no error sufficient to justify judgment for Stratos. In light of this disposition, we do not address the not insubstantial national security concerns raised by the Navy in the remedy phase of the case.

*Conclusion*

Accordingly, the judgment of the United States Court of Federal Claims is reversed, and the injunction is vacated.

COSTS

COMSAT Corporation shall have their costs.

*REVERSED AND VACATED.*