**JOWETT, INCORPORATED,**
Plaintiff–Appellee,

v.

**UNITED STATES, Defendant–
Appellant.**

No. 01–5062.

United States Court of Appeals,
Federal Circuit.

Feb. 4, 2002.

Rehearing Denied March 15, 2002.

Before GAJARSA, LINN, and PROST, Circuit Judges.

PROST, Circuit Judge.

The United States Government ("Government") appeals the April 28, 2000, decision of the Court of Federal Claims granting Jowett, Inc.'s ("Jowett's") motion for summary judgment and denying the Government's cross-motion for summary judgment. *Jowett, Inc. v. United States*, No. 98–641C (Fed. Cl. April 28, 2000). The issue in the case was whether the contract between the Government and Jowett allowed Jowett to use either a dry or a wet method for installing caissons or, as the Government argued, whether Jowett was required to install the caissons using only the wet method. The court held that the contract terms governing the method of caisson installation were susceptible of more than one reasonable interpretation and were thus ambiguous. However, it found the ambiguity to be latent. Accordingly, the court resolved the ambiguity against the United States, which drafted the contract. It adopted Jowett's interpretation, which it found reasonable, and granted summary judgment to Jowett. Because the ambiguity in the contract was sufficiently glaring and obvious to be patent, requiring Jowett to seek clarification before submitting its bid, we *reverse.*

## BACKGROUND

On July 23, 1996, Jowett entered into a construction contract with the United States Army Corps of Engineers ("Army") for a project in Virginia, known as Block "R" Defense CEETA. *Id.* at 1. The contract required Jowett to install drilled foundation caissons. *Id.* After receiving bids from various subcontractors to install the caissons, Jowett awarded the project to McKinney Drilling Company ("McKinney").

There are two different methods of installing caissons, the dry method and the wet slurry method. Jowett contends, and the government does not dispute, that the dry method of installing caissons is less expensive than the wet method. The contract contained a number of paragraphs referring to the method of caisson installation. After Jowett and McKinney entered into the contract, Jowett submitted an installation procedure which covered both the dry and wet construction methods for the Army's approval, as the contract required it to do. That procedure reflected Jowett's position that the contract allowed it to use either the dry or wet method of installation, depending on field conditions.

Rejecting Jowett's interpretation that the contract permitted it to use either the dry or wet method, the Contracting Officer for the Army wrote a letter to Jowett on October 25, 1996, insisting that Jowett was required to use the wet method. The letter stated:

> The impression that the 'dry' method could be used stems only from the wording which appears in Paragraph 3.2a. This paragraph should not have included instructions for placing concrete in dry holes for the current caissons in the plan. Similarly, the wording concerning·

removal of loose soil at the bottom of dry holes should not have been included.

Subsequently, Jowett agreed under protest to install the caissons using the wet method. It maintained, however, that requiring it to use the wet method constituted a constructive change in the contract. On March 13, 1997, Jowett wrote to the Army requesting an equitable adjustment to the contract; it sought reimbursement for the additional costs it claimed were incurred as a result of using the wet method. The Army denied Jowett's claim and on August 10, 1998, Jowett filed a complaint in the Court of Federal Claims.

## PROCEDURAL HISTORY

The Court of Federal Claims granted summary judgment in favor of Jowett. It held that although the contract was ambiguous, the ambiguities were latent. The court also found that Jowett's interpretation of the contract was reasonable, and therefore it held against the Government. When the parties subsequently tried but failed to reach an agreement on the amount of damages, the court conducted an evidentiary hearing. Pursuant to the hearing, the court awarded Jowett $334,324.01.[1]

The Government filed this timely appeal challenging the Court of Federal Claims' grant of summary judgment.[2] We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1295(a)(3) (1994).

## DISCUSSION

### I

At issue in this case is whether an ambiguity exists in the contract between Jowett and the Government and, if so, whether the ambiguity is patent or latent. Both the existence of an ambiguity and whether any ambiguity is patent or latent are issues of law that this court reviews de novo. See Stratos Mobile Networks USA, LLC v. United States, 213 F.3d 1375, 1380 (Fed. Cir.2000). In addition, we review the grant of summary judgment de novo. Id. at 1379.

### II

The first question is whether or not an ambiguity exists with respect to whether the dry or wet method of caisson installation could be used. "A contract is ambiguous if it is susceptible of two different and reasonable interpretations, each of which is found to be consistent with the contract language." Cmty. Heating & Plumbing Co. v. Kelso, 987 F.2d 1575, 1579 (Fed.Cir. 1993).

Jowett argues that the contract is unambiguous because it clearly permitted use of either the dry or wet method, depending on field conditions. To support its claim, Jowett cites paragraphs 1.8.1, 2.1.3, 3.1.a, 3.1.b and 3.2.a of the contract, all of which mention or implicate the dry method; therefore, suggesting that the contract contemplated use of the dry method in at least some instances. For example, paragraph 3.2.a states that "[c]oncrete shall be continuously placed by methods that insure against segregation and dislodging of excavation sidewalls and shall completely fill the shaft. Concrete shall be placed by pumping or drop chutes in dry holes and by tremie or pumping in wet holes."

---

1. The court found that Jowett's total damages equaled $156,634.35 and McKinney's total damages were $174,379.53. In addition, the court awarded a 1% bond increase on the total of their claims to reach the final amount of $334,324.01.

2. The Government has not appealed the amount of damages awarded.

Further, Jowett asserts that the Army's own Project Engineer conceded, in a letter dated October 4, 1996, that either method of caisson installation was appropriate. The letter stated that "Jowett and McKinney shall be prepared [to encounter ground water] but shall be able to execute dry hole installation if that is determined to be appropriate by a representative of the Contracting Officer." Jowett argues that the only way to interpret this letter is that either dry or wet installation is appropriate depending on the field conditions.

If paragraphs 1.8.1, 2.1.3, 3.1.a, 3.1.b, and 3.2.a were the only relevant provisions in the contract, Jowett might well have a compelling argument that the contract unambiguously allowed it to use either the dry or wet method. Such a conclusion, however, would ignore paragraph 1.2.1. of the contract. This paragraph states that "[t]he bid shall be based on wet construction using the slurry displacement...." After reviewing the contract in its entirety, including paragraph 1.2.1, we agree with the Court of Federal Claims that the contract is ambiguous because its terms are susceptible to more than one interpretation.

### III

Having concluded that the contract is ambiguous, the next and final issue is whether the ambiguity is patent or latent. "A patent ambiguity is present when the contract contains facially inconsistent provisions that would place a reasonable contractor on notice and prompt the contractor to rectify the inconsistency by inquiring of the appropriate parties." *Stratos Mobile Networks,* 213 F.3d at 1381. In other words, patent ambiguity exists if the ambiguity is obvious, gross, or glaring. *See Grumman Data Sys. Corp. v. Dalton,* 88 F.3d 990, 997 (Fed. Cir.1996). A latent ambiguity, on the other hand, is "[m]ore subtle than a patent ambiguity." *Triax Pac., Inc. v. West,* 130 F.3d 1469, 1475 (Fed.Cir.1997).

Jowett argues that even if we conclude that the contract is ambiguous, we should find, as the Court of Federal Claims did, that the ambiguity is latent rather than patent. Otherwise, Jowett contends, the contract would not be read as a "harmonious whole ... which gives reasonable meaning to all parts of the [contract]." Thus, Jowett claims that when paragraph 1.2.1 is read in conjunction with all of the other provisions in the contract, the contract as a whole stands for the proposition that Jowett had to be prepared to use the wet slurry method, if necessary, and could not claim additional compensation for using it. We reject Jowett's view.

We are required to give the "words of an agreement their ordinary meaning unless the parties mutually intended and agreed to an alternative meaning." *Jowett, Inc. v. United States,* 234 F.3d 1365, 1368 (Fed.Cir.2000); *see also McAbee Constr. Inc. v. United States,* 97 F.3d 1431, 1435 (Fed.Cir.1996). In addition, "[w]e must interpret the contract in a manner that gives meaning to all of its provisions and makes sense." *McAbee Constr.,* 97 F.3d at 1435. Because the parties do not argue that they mutually intended and agreed to an alternative meaning, we are required to give the words of paragraph 1.2.1 their ordinary meaning.

In construing the contract, we note that paragraph 1.2.1 clearly required Jowett to bid based entirely on the wet method. We conclude that a reasonable contractor would not have assumed, in light of this language, that is was free to use the dry method. Rather, a reasonable contractor would have inquired as to why the contract demanded it to bid based on one method when other contractual provisions seemed to suggest that a cheaper method could be

588

used. Therefore, giving meaning to all the paragraphs in the contract, including 1.2.1, we hold that the ambiguity was patent because the contradictory provisions in the contract were so apparent, glaring, and obvious that Jowett had a duty to ask for clarification before submitting a bid. *See Triax Pac.*, 130 F.3d at 1475.[3] Jowett's failure to seek clarification prevents it from arguing before us that its interpretation of the contract is proper. *See Dalton v. Cessna Aircraft Co.*, 98 F.3d 1298, 1306 (Fed.Cir.1996) (quoting *Grumman Data Sys. Corp.*, 88 F.3d at 998 for the proposition that "[i]f a solicitation contains contract language that is patently ambiguous, a protestor cannot argue, before the Board or this court, that its interpretation is proper unless the protestor sought clarification of the language from the agency before the end of the procurement process").

## CONCLUSION

Accordingly, we reverse the Court of Federal Claims' grant of summary judgment for Jowett because the ambiguity was so obvious and glaring that it required Jowett to seek clarification of the inconsistency before submitting its bid.

---

3. "The patent ambiguity doctrine prevents contractors from taking advantage of ambiguities in government contracts by adopting narrow interpretations in preparing their bids and then, after the award, seeking equitable adjustments to perform the additional work the government actually wanted." *Triax Pac.*, 130 F.3d at 1475 (citing *Interwest Constr. v. Brown*, 29 F.3d 611 (Fed.Cir.1994)).