LOURIE, Circuit Judge,
dissenting.
I agree with the majority that the contract in question is ambiguous, but I disagree that the ambiguity is latent. I find the contract to be patently ambiguous and thus States Roofing Corporation (“States Roofing”) should have inquired about the patent ambiguity. Because States Roofing failed to do so, it did not act as a reasonable contractor, and its interpretation of the contract cannot govern. Therefore, I respectfully dissent.
This dispute centers on the proper interpretation of the term “waterproofing membrane (3 layers)” for roof cells C through J. This term is used in a new work note of drawing A38, which is entitled “Typical Flashing Detail @ Roof Drains & Parapet Walls.” The essence of the parties’ disagreement is whether the contract required the three-layer waterproofing membrane to be made of flashing material, as the government argues, or whether waterproof paint was sufficient, as States Roofing contends. I do not pretend to know the correct answer, but the ambiguity of the drawings is abundantly clear.
“A patent ambiguity is one that is glaring, substantial, or patently obvious.” Comtrol, Inc. v. United States, 294 F.3d 1357, 1365 (Fed.Cir.2002) (citation omitted). “A patent ambiguity is present when the contract contains facially inconsistent provisions that would place a reasonable contractor on notice and prompt the contractor to rectify the inconsistency by inquiring of the appropriate parties.” Stratos Mobile Networks, USA, LLC v. United States, 213 F.3d 1375, 1381 (Fed.Cir.2000). If a contract contains a patent ambiguity, “the rules of government contracting place the obligation of inquiry upon the contractor.” Lockheed Martin IR Imaging Sys., Inc. v. West, 108 F.3d 319, 322 (Fed.Cir.1997). If the contractor fails to inquire about a patent ambiguity, this failure will preclude acceptance of its interpretation of the contract. Stratos Mobile, 213 F.3d at 1381.
In this case, the government admits to having mistakenly omitted the specification for the three-layer waterproofing membrane. Without that specification, the word “layer” is unexplained in the contract, in contrast to “ply,” which was used in drawing A38 for the base flashing, or “coat,” which is used elsewhere in the contract for applications of paint. Despite States Roofing’s insistence that the new work notes on sheet A2, which describe painting the parapet walls, apply to the roof cells in question, those work notes are referenced in drawing A8, not drawing A38. Drawing A8 has a key in the bottom right corner that shades Roof Cells A and B only, evidencing that A8 does not apply to Roof Cells C-J. In contrast, drawings A4-A7 shade Roof Cells C-J and reference drawing A38. “We must interpret [a contract] as a whole and ‘in a manner which gives reasonable meaning to all its parts and avoids conflict or surplusage of its provisions.’ ” United Int’l Investigative Serv. v. United States, 109 F.3d 734, 737 (Fed.Cir.1997) (citing Granite Const. Co. v. United States, 962 F.2d 998, 1003 (Fed.Cir.1992)). We must, then, look to drawing A38 and its new work notes to determine the meaning of “waterproofing membrane (3 layers)” for Roof Cells C-J.
In drawing A38, the three-layer waterproofing membrane is depicted by three *1375 lines that run along the vertical parapet wall and continue over the top of the wall. The bottom of the three-layer waterproofing membrane overlaps with “multiple-ply membrane base flashing” that runs along the surface of the roof and reaches partway up the parapet wall. At the intersection of the three-layer waterproofing membrane and the multiple-ply membrane base flashing are “fasteners,” indicated by dark shading between the membranes, that appear to lock the two membranes to each other. Drawing A38 also depicts “sheet metal coping” that caps the tops of the parapets. Fasteners also appear to connect the sheet metal coping with the three-layer waterproofing membrane. Drawing A38, therefore, seems to indicate that the three-layer waterproofing membrane has some substance to it, rather than being just paint. If the waterproofing membrane were just waterproofing paint, the fasteners between the base flashing and the waterproofing membrane would be superfluous, since one could simply paint three layers of waterproofing paint on top of the base flashing to obtain the same overlap portrayed in drawing A38 without any fasteners. However, drawing A38 clearly uses the undefined term “layer” to describe the waterproofing membrane, in contrast to “ply,” which is used for the base flashing, which would indicate that the waterproofing membrane is not made up of flashing material.
Thus, the contract contains a glaring ambiguity regarding the meaning of “layers.” A reasonable contractor would have inquired about the meaning of the term. States Roofing failed to do so. Because of this failure, we are precluded from adopting States Roofing’s interpretation of the contract. Thus, States Roofing was required to abide by the Navy’s interpretation and use three-ply flashing material as the waterproofing membrane on the parapet walls of Roof Cells C-J.
Because I would hold the contract to be patently ambiguous, I would not reach the question whether States Roofing’s interpretation of the contract was reasonable.
For the foregoing reasons, I respectfully dissent.