ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeals of - | ) |
| | ) |
| Allard Nazarian Group, Inc., dba Granite State Manufacturing | ) ASBCA Nos. 62413, 62414 |
| | ) |
| Under Contract Nos. N65540-00-D-0005 N65540-00-D-0045 N65540-04-D-0020 | ) ) ) |

APPEARANCES FOR THE APPELLANT:     C. Peter Dungan, Esq.
                                    Roger V. Abbott, Esq.
                                      Miles & Stockbridge P.C.
                                      Washington, D.C.

APPEARANCES FOR THE GOVERNMENT:     Samuel W. Morris, Esq.,
                                    DCMA Chief Trial Attorney
                                    Debra E. Berg, Esq.
                                    Ryan S. Johnstone, Esq.
                                    Evan Georgopoulos, Esq.,
                                      Trial Attorneys
                                      Defense Contract Management Agency
                                      Hanscom AFB, MA

OPINION BY ADMINISTRATIVE JUDGE STINSON
ON APPELLANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Appellant Allard Nazarian Group, Inc. (Allard), dba Granite State Manufacturing, seeks partial summary judgment on the issue of whether the government properly assessed a decrement against Allard's fixed hourly labor rate charges incurred on a time and materials basis on various Indefinite Delivery, Indefinite Quantity (IDIQ) contracts. The government argues that it properly applied a decrement, or reduction, to all invoiced amounts submitted by Allard and paid by the government, because Allard failed to submit auditable final indirect cost rate proposals for Fiscal Years 2009 to 2014 (gov't opp'n at 1). Appellant's briefs neither affirmatively state that appellant did, in fact, submit such proposals to the government, nor do they challenge the government's assertion. Instead, appellant characterizes its motion as presenting strictly a legal issue – whether the government "improperly penalized Allard for purportedly failing to submit an [sic] adequate final indirect cost rate proposals for Fiscal Years . . . 2007-2014" (app. mot. at 2). As discussed more fully below, we find that the government improperly applied a decrement to that

portion of Allard's invoiced amounts pertaining to its fixed hourly labor rate charges, and, therefore, grant appellant's motion for partial summary judgment.

STATEMENT OF FACTS (SOF) FOR PURPOSES OF THE MOTION

1. Allard purchased Scandia Manufacturing Company, Inc. (Scandia), and its assets in 2008 (R4, tab 10 at G-000140, G-000150). At that point in time, Scandia had several contracts with the government, including three of the four that are the subject of these appeals (R4, tab 1 at G-000012 (Contract No. N65540-04-D-0020); tab 21 at G-000194 (Contract No. N65540-00-D-0005); and tab 22 at G-000259 (Contract No. N65540-00-D-0045)). In 2008, representatives of Scandia, as transferor, and Allard as transferee, entered into a Novation Agreement, which also was signed by a government administrative contracting officer (R4, tab 10 at G-000142, G-000144).

2. In 2014, the government issued a "Modification of Contract" which recognized and incorporated the 2008 novation agreement into various contracts listed in attachments to the modification (R4, tab 10 at G-000140-41, G-000146-52).

3. It is undisputed that the three contracts at issue here between Scandia and the government were of the IDIQ variety, performed on a time and materials basis (*see* Appellant's Statement of Undisputed Material Facts (ASUMF) ¶¶ 3, 6, 9 and Government's response to Appellant's Statement of Undisputed Material Facts (GRASUMF) ¶¶ 3, 6, 9).

4. Contract No. N65540-00-D-0005, awarded on December 21, 1999, specified fixed hourly labor rates, with an estimated level of effort for each labor category, and stated "[t]he contractor shall be reimbursed for actual direct labor hours incurred during performance at the fixed hourly rates" (R4, tab 21 at G-000203; *see also id.* at G-000194-02). Regarding support costs, the contract provided that "[t]he contractor shall be reimbursed for all Support Costs at cost, including, appropriate, actual material handling or other appropriate indirect costs in accordance with the contractor's usual accounting procedures consistent with FAR [Federal Acquisition Regulation] Part 31" (*id.* at G-000203).

5. Contract No. N65540-00-D-0045, awarded on March 27, 2000, specified that "[t]he contract resulting from this solicitation shall be a Time and Material contract," and included fixed hourly rates for various labor categories, with an estimated level of effort for each labor category (R4, tab 22 at G-000264; *see also id.* at G-000260-63, 265). Regarding support costs, material costs, and certain other costs, the contract provided that "material shall be reimbursed at actual cost[,] plus actual burden rate, but not to exceed $350,000.00" (*id.* at G-000267).

2

6. Contract No. N65540-04-D-0020, awarded on April 8, 2004, specified that "[t]he contract resulting from this solicitation shall be a Time and Material contract," and stated fixed hourly rates for various labor categories with a corresponding total hourly quantity for each labor category (R4, tab 1 at G-000008; *see also id.* at G-000001-6). The contract also provided that "[t]ask orders shall establish an anticipated level of effort (projected man-hours) for each CLIN [Contract line item number] or SLIN [Subline item number] and a Ceiling Price for that task order," and that "[t]he ceiling price shall be the sum of: (1) the projected prime Contractor hours multiplied by the appropriate hourly rates prescribed in the schedule; and (2) the estimated amount of materials priced in accordance with the clause entitled, Payments Under Time-and-Materials and Labor-Hour Contracts" (*id.* at G-0000008, G-000035). Regarding support costs, inclusive of G&A, the contract specified a not to exceed amount of $2,500,000. Regarding material, the contract also stated, "[t]he contractor shall furnish materials in response to the performance of machining, welding, assembling and testing tasks required under this contract, and shall be reimbursed under the Material contract line item contained under the Supplies / Services section . . . ." (*id.* at G-000018). The applicable supplies and services section for "material (at actual cost plus burden rate" specified a not to exceed amount of $2,000,000,00 (*id.* at G-000006).

7. Unlike the prior three contracts discussed above, which initially were between the government and Scandia, the fourth contract at issue in these appeals, Contract No. N65540-09-D-0009, was entered into between Allard and the government, with an effective date of January 29, 2009. The contract stated that "[t]he contract resulting from this solicitation shall be a Time and Material contract" and specified fixed hourly rates for various labor categories, with an estimated level of effort (R4, tab 23 at G-000328; *see also id.* at G-000319-25, G-000331). Support costs and material costs were to be reimbursed at the actual cost plus burden rate (*id.* at G-000325-27). The contract incorporated by reference FAR 52.216-7 Allowable Cost and Payment (DEC 2002) (*id.* at G-000358).[1]

8. All four contracts included FAR 52.232-7, Payments under Time-and-Material and Labor-Hour Contracts, which provides that, upon "submission of vouchers approved the Contracting Officer or the authorized representative," the government shall pay the contractor the hourly "rate(s) prescribed in the contract for payment for labor that meets the labor category qualifications of a labor category specified in the contract," with the total labor amount computed "by multiplying the appropriate hourly rates . . . by the number of direct labor hours performed" (FAR 52.232-7(a)(1), (a)(2); *see also* R4, tab 1 at G-000039 (incorporating

---

[1] We note that the three contracts awarded Scandia at issue here did not incorporate FAR 52.216-7, either in full text or by reference.

3

FAR 52.232-7 Payments Under Time-and-Materials and Labor Hour Contracts (DEC 2002)); 21 at G-000223 (incorporating FAR 52.232-7 Payments Under Time-and-Materials and Labor Hour Contracts (FEB 1997)); R4, tab 22 at G-000289 (incorporating FAR 2.232-7 Payments Under Time-and-Materials and Labor Hour Contracts (FEB 1997)); and R4, tab 23 at G-000358 (incorporating 52.232-7 Payments Under Time-and-Materials and Labor Hour Contracts (FEB 2007))).[2]

9. By letter dated November 27, 2019, the Defense Contract Management Agency (DCMA) issued a contracting officer's final decision and demand for payment of debt "resulting from Allard's/Scandia's failure to submit indirect cost rate proposals for Fiscal Years 2007-2009," stating that the "[d]ecision is applicable to all flexibly-priced contracts and subcontracts performed by Scandia/Allard during Fiscal Years 2007-2009" (R4, tab 19 at G-000180). According to the contracting officer "all reasonable efforts have been exhausted to obtain the subject matter final indirect cost rate proposals," and, therefore, the government had "unilaterally established . . . final indirect rates for Allard/Scandia fiscal years ending 31 December 2007, 31 December 2008, and 31 December 2009" (*id.* at G-000181). Stating that "there is no evidence of any incurred cost proposals having been submitted by Allard/Scandia for years prior to 2007 since FY 2000" which the government could have used "as historical documentation in determining Final Indirect Rates for Fiscal Years 2007-2009," the contracting officer concluded, "I am left with no other recourse but to apply the DCAA Baltimore-recommended 20% decrement . . . to all costs billed and paid for in Fiscal Years 2007-2009" (*id.*). The contracting officer's determination did not limit application of the decrement to just appellant's indirect costs, but rather applied the decrement against all invoiced amounts, including appellant's direct, fixed rate labor costs. The final decision referenced the following three FAR provisions as support: FAR 52.216-7, FAR 42.703-2 and FAR 42.705 (*id.* at G-000180).

10. Also by letter dated November 27, 2019, the DCMA contracting officer issued a similar final decision and demand for payment of debt resulting from appellant's "failure to submit indirect cost rate proposals for Fiscal Years 2010-2014" (R4, tab 20 at G-000187). The contracting officer stated that "there is no evidence of any incurred cost proposals having been submitted by Allard Nazarian Group, Inc. for years prior to 2010, extending back to Fiscal Year 2000," and that, "[h]ad any been available, I would have used them as historical documentation when determining Final Indirect Rates for Fiscal Years 2010-2014" (*id.* at G-000188). The contracting officer concluded, "I am left with no other recourse but to apply the DCAA-recommended 16.4% decrement to all costs billed and paid for in Fiscal Years 2010-2014" (*id.*). The contracting officer's determination did not limit application of the decrement to just appellant's indirect costs, but rather applied the decrement against all invoiced

---

[2] Contract No. N65540-04-D-0020 stated that, regarding payment of overtime hours, FAR 52.232-7(a)(2) "is not applicable to this contract" (R4, tab 1 at G-000007).

amounts including appellant's direct, fixed rate labor costs. The final decision referenced the following three FAR provisions as support: FAR 52.216-7, FAR 42.703-2 and FAR 42.705 (*id.* at G-000187).

11. On November 14, 2022, appellant submitted to the Board, on behalf of both parties, a partial settlement agreement and release dated November 9, 2022, which provided, in part:

> Each Party consents to the dismissal with prejudice [of the] FY 2007 claim and the FY 2008 claim from the COFD on appeal in ASBCA No. 62413, and shall file a joint request for such partial dismissal of the Appeal with the Board within ten (10) business days of execution of this Settlement Agreement by the Parties. Nothing herein shall be construed to affect in any way the COFD or the Appeal as it concerns the FY 2010 claim.

(Email dtd. November 14, 2022, attachment at ¶ 4) Based upon our review of the file, as of the date of this decision, it does not appear that the parties have filed the referenced joint request for partial dismissal of the claims resolved by the November 9,2022, partial settlement agreement.[3]

## DECISION

### I. Standard of Review

"Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *First Com. Corp. v. United States*, 335 F.3d 1373, 1379 (Fed. Cir. 2003). "The moving party bears the burden of establishing the absence of any genuine issue of material fact and all significant doubt over factual issues must be resolved in the opposing party's favor." *Bubble Room, Inc. v. United States*, 159 F.3d 553, 561 (Fed. Cir. 1998). A party challenging a motion for summary judgment "'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson v. Liberty Lobby, Inc.*,

---

[3] Appellant states that the parties have settled Fiscal Years 2007 and 2008 (app. mot. at 8; ASUMF) ¶ 19)). The government disagrees, stating instead that Fiscal Years 2007 and 2008 are not part of these appeals (GRASUMF ¶ 18 (we note that the government's response is misnumbered with two paragraphs numbered 17, such that GRASUMF ¶ 18, in actuality, is a response to ASUMF ¶ 19)). Either way, our decision here does not concern any claim regarding those two fiscal years.

477 U.S. 242, 248 (1986) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288 (1968)).

## II. Contentions of the Parties

The government argues that appellant's alleged failure to submit auditable final indirect cost rate proposals for Fiscal Years 2009 to 2014, as required by FAR 52.216-7, left the government unable to verify amounts invoiced by Allard during that period of time (gov't opp'n at 2). According to the government, "[f]or that reason, and to protect the Government's interests, the DCMA Administrative Contracting Officer," in reliance upon guidance provided by the Defense Contract Audit Agency (DCAA), "imposed a decrement of 20 percent for FY 2009 and 16 percent for FYs 2010-2014 on all billed amounts" (*id.*). The crux of the government argument is that FAR 52.216-7(g), which authorizes the imposition of a decrement by the contracting officer, applies to *all* requests for reimbursement, not just the indirect cost rates.

Appellant's motion for partial summary judgment challenges that portion of DCMA's actions applying a decrement to appellant's fixed hourly rate charges for labor costs (app. mot. at 6). Appellant argues that the government's actions violated FAR 16.601(c)(2), which provides that "the contract shall specify separate fixed hourly rates that include wages, overhead, general and administrative expenses, and profit for each category of labor," and FAR 16.307(a), which provides that FAR 52.216-7(g) shall apply "only to the portion of the contract that provides for reimbursement of materials (as defined in the clause at 52.232-7) at actual cost" (*id.* at 6-7).

## III. Unilateral Rate Determinations and Burden of Proof

These appeals involve contracting officer unilateral rate determinations, which are considered a government claim; as such, the government has the burden of proof. *Northrop Grumman Corp.*, ASBCA No. 62165, 21-1 BCA ¶ 37,922 at 184,170; *see also Strategic Technology Institute, Inc.*, ASBCA No. 61911, 22-1 BCA ¶ 38,027 at 184,674 (challenge to final decision concerning unilateral rate determination "is a government claim, and the government has the burden of establishing that the costs were not allowable"); *Kellogg Brown & Root Servs., Inc.*, ASBCA No. 58081, 17-1 BCA ¶ 36,595 at 178,240 ("The government has the burden of proof in establishing that a cost is unallowable by operation of a specific contract provision or regulation"); *Fiber Materials, Inc.*, ASBCA No. 53616, 07-1 BCA ¶ 33,563 at 166,252 ("If a cost is allocable to a contract and is reasonable, the government normally has the burden to prove that it is unallowable due to a contract provision, statute or regulation").

6

IV. Payments Under IDIQ, Time and Material Contracts

It is undisputed that the four contracts at issue in these appeals are time and material, IDIQ contracts, with reimbursement for labor performed on the contracts based upon specified fixed hourly rates, and payment for the cost of materials and other discrete items based upon a cost-reimbursement basis (SOF ¶¶ 3-8). As explained by the Court of Claims in *H. L. Yoh Co., v. United States*:

> When a contractor enters into a time and materials contract [it] agrees to furnish the labor and equipment necessary to fulfill [its] obligations at a prescribed rate. The rate to be charged for direct labor can be precisely predetermined at an hourly rate or any acceptable measurement. However, the rate for nonproduction personnel such as owners, officers, clerical workers, salesmen, and others must of necessity be estimated. This rate is referred to as overhead or burden rate.

153 Ct. Cl. 104, 106, 288 F.2d 493, 494 (1961).

Pursuant to FAR 16.601, "[a] time-and-materials contract provides for acquiring supplies or services on the basis of – (1) [d]irect labor hours at specified fixed hourly rates that include wages, overhead, general and administrative expenses, and profit; and (2) [a]ctual cost for materials (except as provided for in [FAR] 31.205-26(e) and (f))."[4] FAR 52.232-7 sets forth procedures for the government to make payments under time and material contracts. Pursuant to FAR 52.232-7(a), payment by the government for a contractor's labor is made upon submission of a contractor's approved vouchers, based upon the contract's fixed labor rates – specifically, the hourly rate "prescribed in the contract for payment for labor that meets the labor category qualifications of a labor category specified in the contract" (*see also* SOF ¶ 8). Pursuant to FAR 52.232-7(b), payment by the government for a contractor's "[a]pplicable indirect costs," which includes the pricing of materials, is likewise made upon the submission of vouchers approved by the government. FAR 52.232-7(b) defines materials as "(A) [d]irect materials, including supplies transferred between divisions, subsidiaries, or affiliates of the Contractor under a common control; (B) [s]ubcontracts for supplies and incidental services for which there is not a labor category specified in the contract; (C) [o]ther

---

[4] FAR 31.205-26(e) concerns "materials, supplies and services that are sold or transferred between any divisions, subdivisions, subsidiaries, or affiliates of the contractor under a common control" and FAR 31.205-26(f) concerns a commercial product or commercial service under paragraph (e) that is sold or transferred at a price based on a catalog or market price.

direct costs (e.g., incidental services for which there is not a labor category specified in the contract, travel, computer usage charges, etc.); and (D) [a]pplicable indirect costs."

V.  Establishment of Final Indirect Cost Rates

During contract performance, the contractor invoices an estimated amount for indirect costs pursuant to FAR 52.216-7(a) and typically is paid that amount, assuming the contracting officer is satisfied that the estimates appear appropriate and that certain exceptions do not apply. *Falmouth Scientific, Inc.*, ASBCA No. 60776, 19-1 BCA ¶ 37,389 at 181,765.  The contractor submits yearly "indirect-cost rate proposals, which provide a schedule of all claimed expenses," and "must certify that its incurred-cost submissions do not include any unallowable costs." *Sec'y of Defense v. Raytheon Co.*, 56 F.4th 1337, 1339 (Fed. Cir. 2023).  FAR 52.216-7 "defines 'final payment' and sets forth the requirements that must be met before final payment is made." *Edward Hayes, as Liquidator of Base Operation Services GmbH*, ASBCA Nos. 59829, 59907, 16-1 BCA ¶ 36,412 at 177,540.

FAR 52.216-7(d)(1) provides that final annual indirect cost rates "shall be established in accordance with [FAR] subpart 42.7 . . . in effect for the period covered by the indirect cost rate proposal."  FAR 52.216-7(d)(2)(i) requires the contractor to submit to the government "an adequate final indirect cost rate proposal . . . within the 6-month period following the expiration of each of its fiscal years."  FAR 52.216-7(e), Billing rates, provides that "[u]ntil final annual indirect cost rates are established for any period, the Government shall reimburse the Contractor at billing rates established by the Contracting Officer or by an authorized representative (the cognizant auditor), subject to adjustment when the final rates are established," and that "[t]hese billing rates – (1) [s]hall be the anticipated final rates; and (2) [m]ay be prospectively or retroactively revised by mutual agreement, at either party's request, to prevent substantial overpayment or underpayment."

The procedures listed in FAR 52.216-7 "are part of the process of reaching agreement on final indirect cost rates pursuant to FAR 52.216-7(d)." *Edward Hayes*, 16-1 BCA ¶ 36,412 at 177,541.  The parties' inability to agree upon final annual indirect cost rates constitutes a dispute within the meaning of the Disputes clause, and either party may bring a claim for payment of a sum certain. *Id.* (citing FAR 52.216-7(d)(4) and FAR 52.233-1).

Both parties cite FAR 52.216-7 in their briefs but offer divergent interpretations of that FAR provision.  As noted above, only one of the four contracts included FAR 52.216-7 (SOF ¶ 7; *see also* app. reply at 7 n.2 ("[o]nly the 2009 Contract 'incorporated' FAR 52.216-7")).  Indeed, the government apparently recognizes as much, stating that "FAR 52.216-7 applies to the 0009 Contract, full stop" (gov't opp'n at 10) and "the provisions of FAR 52.216-7 apply to the entire 0009 Contract" (*id.*

8

at 13). Although it appears there is a question as to whether Allard even was required to submit a final indirect cost rate proposal pursuant to FAR 52.216-7 under the three contracts initially held by Scandia, we are not called upon to decide that issue here.

VI. FAR 16.307 and the Application of FAR 52.216-7 to the Contracts Here

FAR 16.000 "describes types of contracts that may be used in acquisitions," and "prescribes policies and procedures and provides guidance for selecting a contract type appropriate to the circumstances of the acquisition." Relevant here is FAR 16.307(a)(1), which requires the contracting officer to "insert the clause at 52.216-7, Allowable Cost and Payment, in solicitations and contracts when a cost-reimbursement contract or a time-and-materials contract (other than a contract for a commercial product or commercial service) is contemplated." Although FAR 16.307 is not specifically referenced in the subject contracts, the clause nonetheless provides guidance, policies, and procedures applicable to various types of contracts, including time and material contracts and is clearly relevant to issues presented in these appeals.[5] FAR Part 52 "[s]ets forth the solicitation provisions and contract clauses prescribed by [the FAR]" and provides procurement officials "instructions for using provisions and clauses in solicitations and/or contracts." FAR 52.000(a)-(b).

Pursuant to FAR 16.307(a)(1), FAR 52.216-7 is a mandatory provision to be included in time and materials contracts. As we already have found, all four contracts at issue here are time and material contracts. FAR 16.307(a)(1) instructs, with regard to time-and-materials contracts, that "the clause at 52.216-7 applies in conjunction with the clause at 52.232-7[ ], but only to the portion of the contract that provides for reimbursement of materials (as defined in the clause at 52.232-7) at actual cost." The parties disagree regarding the interplay between FAR 52.216-7 (which was included in only the 2009 contract) and FAR 52.232-7 (which was included in all four contracts at issue here). Specifically, the parties disagree as to whether FAR 52.232-7 - which sets forth procedures for the government to make payments under time and material

_____

[5] Allard alleges that each of the four contracts at issue were subject to FAR 16.307 and FAR 16.601 (*see* ASUMF ¶¶ 5, 8, 11, and 14). In its response to Allard's statement of undisputed material fact, the government disagrees, stating that the contracts are not subject to the FAR provisions because they were not "incorporated" into the contract (GRASUMF ¶ 5; *see also id*. at ¶¶ 8, 11, and 14). Although the government argues FAR 16.307 was not incorporated into the contracts, as discussed below, the government relies upon FAR 16.307 as part of its argument that FAR 52.216-7 applies to both the time and labor portions of time and materials contracts (gov't opp'n at 9). Moreover, whether the contracts here are "subject to" certain FAR provisions presents an issue of law, and is not properly characterized as a disputed issue of fact.

9

contracts - limits the application of FAR 52.216-7(g) to reimbursement of materials under such contracts.

We note that Allard - properly - does not dispute that FAR 52.216-7 is applicable to all four contracts, even though three of the contracts did not specifically incorporate that clause into the contracts (app. reply at 7). Indeed, pursuant to the *Christian* doctrine, FAR 52.216-7 - as a mandatory time and materials contract clause specified in FAR 16.307(a) - is considered inserted into the contract by operation of law. *K-Con, Inc. v. Sec'y of Army*, 908 F.3d 719, 724 (Fed. Cir. 2018) (affirming Board decision to incorporate mandatory contract provision pursuant to *L. Christian & Assoc. v. United States*, 160 Ct. Cl. 1, 17, 312 F.2d 418, 427 (1963)).

VII.   FAR 52.216-7 Does not Apply to the Labor Rates of the Contracts Here

The government argues that FAR 52.216-7 is "applied in its entirety to the [2009] contract" (gov't opp'n at 2) and "applies to both the time and labor portions of T&M contracts in accordance with FAR 16.307" (*id.* at 9). As support, the government alleges that "[t]here is nothing in the FAR 52.216-7 clause itself, or in FAR 16.307, to support the argument that FAR 52.27 [sic] does not otherwise apply in its entirety to T&M contracts" (*id.* at 3-4).

Allard argues in response that FAR 52.216-7 "applies only to material costs and does not cover fixed labor charges" (app. mot. at 11). According to Allard, FAR 16.307 "expressly provides that in regard to time-and-materials contracts, FAR 52.216-7 applies only to the reimbursement of cost of materials" (*id.* at 13). As support, appellant notes that FAR 16.307(a)(1) requires the government insert FAR 52.216-7 into time and materials contracts, and "that the clause at 52.216-7 applies in conjunction with the clause at 52.232–7, but only to the portion of the contract that provides for reimbursement of materials (as defined in the clause at 52.232-7) at actual cost." *Id.* (quoting FAR 52.216-7(a)(1).[6]

Allard is correct. The express language of FAR 16.307(a)(1) dictates that FAR 52.216-7 applies "only to the portion of the contract that provides for reimbursement of materials (as defined in the clause at 52.232-7) at actual cost" (app. mot. at 7). The government attempts to avoid the plain language of FAR 16.307(a), arguing that changes made to that provision subsequent to the time in which all four contracts at issue here were entered into by the parties, somehow lessen the import of that provision. According to the government, the "[r]egulatory history reflects that

---

[6] FAR 16.307(a) also states that FAR 52.216-7 "does not apply to labor-hour contracts." "A labor-hour contract is a variation of the time-and-materials contract, differing only in that materials are not supplied by the contractor." FAR 16.602.

during 2006 and 2007 there was concern about aligning FAR 52.216-7 and FAR 52.232-7 on materials and that the 2011 clarification was intended to harmonize the payment provisions of the two clauses on materials" (gov't opp'n at 3). Specifically, the government argues "the language of FAR 16.307, 'for time-and-materials contracts FAR clause 52.216-7 is used *in conjunction with* FAR clause 52.232-7. . . .'" (*Id.* (citing FAR; Payments Under Time-and-Materials and Labor-Hour Contracts, 76 Fed. Reg. 44884-5 (July 27, 2011) (emphasis supplied by the government)).

Allard responds, stating that the government's argument "fails to address the plain language of FAR 16.307" limiting the application of FAR 52.216-7 to the "material" portion of time and material contracts (app. reply at 2). We agree. The plain language of FAR 16.307 applicable at the time the contracts were awarded limits the application of FAR 52.216-7 to "the portion of the contract that provides for reimbursement of materials." FAR 16.307(a)(1); *see also Tesoro Hawaii Corp. v. United States*, 405 F.3d 1339, 1347 (Fed. Cir. 2005) ("When there is no ambiguity in the meaning of the regulation, 'it is the duty of the courts to enforce it according to its obvious terms and not to insert words and phrases so as to incorporate therein a new and distinct provision'") (quoting *Gibson v. United States*, 194 U.S. 182, 185 (1904)).

As noted by appellant, the government "relies largely on a mischaracterization of the regulatory history of this prescription - based on a modification to FAR 16.307 that became effective in August 2012, about three-and-a-half years **after** the award of the last of the four contracts that are subject to this contact claim" (*id.*) (emphasis in original). We are unpersuaded by the government's arguments regarding FAR 16.307, and the subsequent amendment to that provision cited by the government. We see no need to deviate from the plain language of FAR 16.307. Moreover, as we discuss below, the FAR contains additional provisions which regulate the time portion of time and material contracts where reimbursement is based upon actual direct labor hours at fixed hourly rates.

The government cites FAR 52.216-7(g) as absolute authority for the contracting officer "applying these decrements to all billed costs" (gov't opp'n at 2; *see also id.* at 12-13). According to the government, FAR 52.216-7(g) permits "reductions to payments due to the billing of unallowable costs or to recoup prior overpaid amounts where no auditable support is submitted" (*id.* at 2). FAR 52.216-7(g) provides:

> Audit. At any time or times before final payment, the Contracting Officer may have the Contractor's invoices or vouchers and statements of cost audited. Any payment may be - (1) Reduced by amounts found by the Contracting Officer not to constitute allowable costs; or (2) Adjusted for prior overpayments or underpayments.

11

As discussed previously, FAR 52.216-7 sets forth procedures for setting final indirect cost rates. FAR 52.216-7(g) provides the government the right to conduct an audit prior to final payment and to reduce or adjust any such payments determined by the contracting officers to be unallowable costs. FAR 52.216-7(g) does not provide the government the right to "recoup prior overpaid amounts where no auditable support is submitted" (*id.*). Here, the contracting officer's application of a decrement on appellant's direct labor rate costs was not based upon a payment "found by the Contracting Officer not to constitute allowable costs." FAR 52.216-7(g). Rather, the government applied a decrement to appellant's *direct labor rate* costs based upon appellant's alleged failure to submit auditable *indirect cost rate* proposals. FAR 52.216-7(g) does not provide a proper justification, or regulatory authority, for the government's actions taken here.

The government cites *Thorpe See-Op Corp.*, ASBCA Nos. 58960, 58961, 16-1 BCA ¶ 36,254 at 176,874, for the proposition that a "reduction of the final settlement amount due a contractor who submitted proposals DCAA found inadequate for audit or otherwise unreliable was authorized under FAR 52.216-7(g)" (gov't opp'n at 13). However, that appeal concerned a government challenge to a termination for convenience settlement proposal of a cost-plus-fixed-fee contract pursuant to FAR 52.249-6. The government determined that appellant had completed only 15 percent of the contract work and the Board therefore reduced the claimed fixed fee amount set forth in the settlement proposal to 15 percent of the amount claimed, as well as to work performed as set forth in one of appellant's vouchers. *Thorpe See-Op Corp.*, 16- 1 BCA ¶ 36,254 at 176,873-874.

Rejecting the contractor's challenge to the government's authority to reduce paid voucher amounts pursuant to FAR 49.303-1, the Board, noted that FAR 52.216-7(g)(l)-(2), provides that "[a]ny payment may be . . . [r]educed by amounts found by the Contracting Officer not to constitute allowable costs or . . . [a]djusted for prior overpayments or underpayments." *Id.* at 176,871. The Board then concluded that

> [a]lthough a termination for convenience settlement proposal need only include unvouchered costs, the contracting officer may, prior to final payment pursuant to any settlement, audit vouchered costs already paid to determine the amount of final payment, and may reduce the amount of final payment by the amount of unallowable, vouchered costs already paid, as well as adjust any payment for prior overpayment.

*Id.* at 176,874.

That simply is not the situation presented here. These appeals do not concern final settlement of a termination for convenience proposal based upon a percentage of work completed. Indeed, the decrement applied in these appeals is neither based upon a percentage of work completed, nor is there any allegation that appellant failed to complete work on any of the contracts at issue, let alone a percentage of the work. Our decision in *Thorpe See-Op* does not address the issue presented in these appeals and does not support a finding that the government may assess an indirect cost rate decrement to direct labor hour rates based upon appellant's alleged failure to submit auditable final indirect cost rate proposals on time and material contracts.

VIII.  <u>FAR 42.703-2 and the Government's Authority to Establish Unilateral Rates</u>

As noted above, FAR 52.216-7 states that final annual indirect cost rates shall be established in accordance with FAR subpart 42.7. One such provision is FAR 42.703-2, entitled "Certificate of indirect costs." It is FAR 42.703-2(c) that grants the contracting officer authority to unilaterally establish final indirect cost rates where "the contractor has not certified its proposal for final indirect cost rates and a waiver is not appropriate."[7] FAR 42.703-2(c)(1). Although FAR 42.703-2 clearly provides the contracting officer authority to set a unilateral final indirect cost rate, that provision does not grant the contracting officer authority to apply the unilaterally-established final indirect cost rates as a decrement to a contractor's direct labor costs. *See Technology Sys., Inc.*, ASBCA No. 59577, 17-1 BCA ¶ 36,631 at 178,378 ("After the indirect cost rates are agreed to between the contractor and the government (or, absent agreement, the government imposes its own rates upon the contract), the contractor is required to update the prior billing to reflect the final indirect cost rates") (citing FAR 52.216-7(d)(2)(v)).

In *Fiber Materials, Inc.*, the Board held that:

> if a contractor fails entirely to certify its final indirect cost rates, the only limits imposed by FAR 42.703-2(a) and (c) are that no proposal shall be accepted and no agreement shall be made to establish the final rates. Under the regulation in effect for FMI FYs 1995 and 1996, the CO is to establish the rates unilaterally if they are necessary for contract continuation.

*Fiber Materials, Inc.,* 07-1 BCA ¶ 33,563 at 166,251 ("under DFARS 252.242-7001(b) . . . a contractor's failure to submit a cost rate certificate results in the government's unilateral establishment of the rates). To be clear, the

---

[7] The issue of whether waiver is appropriate here is not presently before the Board.

unilaterally-established rates addressed in *Fiber Materials*, and FAR 42.703-2, are the contractor's final indirect cost rates.

Both contracting officer final decisions include a reference to FAR 42.703-2 (SOF ¶¶ 9-10), yet neither party addresses the import of this provision in their respective briefs. FAR 42.703-2 allows the government to set a unilateral rate aimed at ensuring the government does not reimburse a contractor for unallowable costs. Specifically, FAR 42.703-2(c) provides that any unilateral rate "should be - (i) [b]ased on audited historical data or other available data as long as unallowable costs are excluded; and (ii) [s]et low enough to ensure that unallowable costs will not be reimbursed." FAR 42.703-2(c)(2).

However, there is no allegation here that the direct labor hours incurred by appellant and paid by the government pursuant to the contracts at issue were, in and of themselves, an unallowable cost. As noted by appellant, under a time and materials contract, FAR 16.601(c)(2) provides that "the contract shall specify separate fixed hourly rates that include wages, overhead, general and administrative expenses, and profit for each category of labor" (app. mot. at 6) (emphasis omitted). Indeed, the government recognizes that "a time-and-materials contract is one under which the parties 'agree to fixed hourly rates for specified classes of labor with payment based on the number of actual hours incurred'" (gov't opp'n at 11) (emphasis omitted) (citing *Dawkins Gen. Contractors & Supply, Inc*., ASBCA No. 48535, 03-2 BCA ¶ 32,305 at 159,845 (quoting John Cibinic, Jr. and Ralph C. Nash, Jr., FORMATION OF GOVERNMENT CONTRACTS 1174 (3d ed. 1998))).

We see nothing in any of the regulations cited by the government that supports the proposition the government may apply or impose a government-determined final indirect cost rate upon a contractor's direct labor costs - costs that are determined by contractually mandated and agreed upon hourly labor rates. The government has not cited any other authority that specifically allows it to assess a decrement upon direct labor on a time and materials contract where the contractor has failed to submit an auditable final indirect cost rate proposal. The government's imposition of an indirect cost rate decrement upon appellant's fixed labor costs is unreasonable as not supported by the regulatory authorities cited by the government and contrary to the traditional demarcation between direct and indirect costs and the separate treatment of those costs. *See Kearfott Guidance & Navigation Corp*., ASBCA No. 49271 *et al.*, 04-2 BCA ¶ 32,757 at 162,028 (government not entitled to apply decrement factor to adjust G&A rate where estimated amount "is unsupported by any credible evidence in the record of reasonableness"). In so holding, we make no determination about the propriety of the government's decrement as applied to appellant's indirect costs, as that issue is not before the Board for consideration as part of appellant's motion for partial summary judgment.

IX.  FAR 52.216-7 Schedule K

FAR 52.216-7(d)(2)(iii) sets forth certain data that "[a]n adequate indirect cost rate proposal shall include."  One set of data listed in that FAR provision is Schedule K, Summary of Hours and Amounts on Time and Material (T&M)/Labor Hour Contracts, which is identified as a "[s]ummary of each time-and-materials and labor-hour contract information, including labor categories, labor rates, hours, and amounts; direct materials; other direct costs; and, indirect expense applied at claimed rates." FAR 52.216-7(d)(2)(iii)(K).  The government argues that "[n]otwithstanding the requirement in the 0009 Contract, [Allard] failed to submit . . . the required Schedule K (gov't opp'n at 5).[8]  The government argues that this alleged failure by appellant left the government with no other option by which to protect its interests regarding validation of appellant's direct labor costs.  Specifically, the government states that it "could not validate, through audit, the number of hours and categories of labor claimed and paid over the course of a contractor's fiscal year" (gov't opp'n at 9).

We disagree.  As already discussed, FAR 52.216-7 sets forth procedures for validating indirect costs/rates.  FAR 52.232-7, which concerns payments under time and material and labor-hour contracts, grants the contracting officer the right to request at any time before final payment an "audit of the invoices or vouchers and substantiating material," and provides that "[e]ach payment previously made shall be subject to reduction to the extent of amounts, on preceding invoices or vouchers, that are found by the Contracting Officer not to have been properly payable and shall also be subject to reduction for overpayments or to increase for underpayments." FAR 52.232-7(e) (DEC 2002);[9] *see also Lockheed Martin Integrated Sys., Inc.*,

---

[8] To the extent the government complains that appellant failed to provide information required by Schedule K, we note the government readily admits that "the 2002 version of FAR 52.216-7 in the contract did not mandate the specific format for the required supporting cost data," but suggests that "the clause directed [Allard] to FAR subpart 42.7 . . . .  FAR 42.705-1(b), in turn, directed [Allard] to DCAA's publicly available pamphlet that explained in detail the information that must be provided for a proposal to be adequate."  (Gov't opp'n at 5) Regardless, our decision here concerns not Allard's alleged failure to submit auditable final indirect cost rate proposals, but rather whether, as a matter of law, the final indirect cost rate decrement should be applied to the contractor's fixed rate labor costs.

[9] The first two contracts at issue here (0005, 0045) incorporated versions of FAR 52.232-7 wherein the government's audit rights appeared in paragraph (e) (SOF ¶ 8; *see* FAR 52.232-7(e) (FEB 1997) and (DEC 2002)).  The last two contracts (0020, 0009) incorporated a version wherein the government's audit rights appeared in paragraph (f), as well as additional minor changes in wording (i.e., removal of the words "preceding invoices" prior to "or vouchers," and

ASBCA Nos. 59508, 59509, 17-1 BCA ¶ 36,597 at 178,283 (FAR 52.232-7 incurred costs audit of subcontractor direct labor costs on task orders issued under several (T&M)/ IDIQ contracts).

The incurred cost audit provisions of FAR 52.232-7(f) squarely protect the government's interest regarding previous payment of fixed hourly labor rate charges pursuant to time and material contracts by allowing review of a contractor's "vouchers and supporting documentation." *See Dawkins General Contractors & Supply, Inc.*, ASBCA No. 48535, 03-2 BCA ¶ 32,305 at 159,846 ("prior payments do not estop the Government from asserting that the contractor was overpaid") (citations omitted). Indeed, the government here recognizes that "FAR 52.232-7(a) set[s] forth detailed requirements for computing, recording, and submitting vouchers for payment of T&M labor costs, which were required to be invoiced once each month, or more frequently if allowed by the Contracting Officer," that it specifies "the support required for each voucher for labor costs," and contains "a specific provision for the Government to withhold amounts due if needed as a reserve to protect the Government's interests" (gov't opp'n at 4). It seems clear that in these appeals the provisions of FAR 52.232-7 protect the government's interest regarding payment of fixed hourly labor rate charges. This is especially true given that the audit rights granted the government in FAR 52.232-7 apply to all four contracts at issue here by inclusion of that FAR provision in each of the contracts (SOF ¶ 8).

Although not specified in our rules, we note that the government, as the party opposing the motion for partial summary judgment, submitted a counterstatement of undisputed material facts (GCUMF). Paragraph 57 states that "[f]or direct labor, DCAA was unable to confirm if, in accordance with contract provisions, the claimed hours exceeded the projected number of man hours, whether [Allard] had claimed the correct combination of labor categories in the task order(s), or if [Allard] exceeded the ceiling price for the task order" (GCUMF ¶ 57). As support for this fact, the government cites *only* a portion of Contract No. N65540-09-D-0009 listing the labor rates applicable to the contract (*id.*) (citing R4, tab 23 at G000320-325)), which is insufficient evidence to establish the proposition for which it is cited. Moreover, the government does not address whether an audit of appellant's fixed hourly labor rate charges pursuant to FAR 52.232-7 – as reflected in the "vouchers and supporting documentation" submitted pursuant to that contract – could have satisfied its concerns regarding whether appellant's claimed direct labor hours exceeded projected labor hours, whether appellant claimed the correct combination of labor categories, or whether appellant exceeded the ceiling price. FAR 52.232-7(f).

_____

addition of the words "or authorized representative" after "Contracting Officer") (SOF ¶ 8; *see* FAR 52.232-7(f) (FEB 2007)). Those 2007 changes also appear in the current version of the regulation. *See* FAR 52.232-7(f) (NOV 2021).

## CONCLUSION

The Board grants appellant's motion for partial summary judgment. The parties shall file a joint status report no later than 45 days from the date of this decision setting forth a proposed schedule for further proceedings.

Dated: July 27, 2023

DAVID B. STINSON
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

RICHARD SHACKLEFORD
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

J. REID PROUTY
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA Nos. 62413, 62414, Appeals of Allard Nazarian Group, Inc. dba Granite State Manufacturing, rendered in conformance with the Board's Charter.

Dated: July 28, 2023

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals