# United States Court of Appeals for the Federal Circuit

---

**K-CON, INC.,**
*Appellant*

**v.**

**SECRETARY OF THE ARMY,**
*Appellee*

---

2017-2254

---

Appeal from the Armed Services Board of Contract Appeals in Nos. 60686, 60687, Administrative Judge Kenneth David Woodrow, Administrative Judge Mark N. Stempler, Administrative Judge Richard Shackleford.

---

Decided: November 5, 2018

---

ROBERT J. SYMON, Bradley Arant Boult Cummings LLP, Washington, DC, argued for appellant. Also represented by ARON C. BEEZLEY.

JESSICA R. TOPLIN, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for appellee. Also represented by JOSEPH H. HUNT, ROBERT E. KIRSCHMAN, JR., STEVEN J. GILLINGHAM.

---

Before REYNA, BRYSON, and STOLL, *Circuit Judges*.

STOLL, *Circuit Judge*.

K-Con, Inc. and the Army entered into two contracts for pre-engineered metal buildings. The Armed Services Board of Contract Appeals ("Board") held that bonding requirements were included in the contracts by operation of law at the time they were awarded, pursuant to the *Christian* doctrine.[1] *See G. L. Christian & Assocs. v. United States* (*Christian I*). K-Con appeals. We conclude that the two contracts are construction contracts and that, under the *Christian* doctrine, the standard bond requirements in construction contracts were incorporated into K-Con's contracts by operation of law. Accordingly, we affirm.

I

K-Con claims that, after the Army awarded two contracts for pre-engineered metal buildings, the Army delayed issuance of a notice to proceed for two years, resulting in $116,336.56 in increases in costs and labor. According to K-Con, this delay was due solely to the government's decision to add to each contract the performance and payment bonds set forth in Federal Acquisition Regulation ("FAR") 52.228-15, Performance and Payment Bonds—Construction.

In September 2013, the government awarded to K-Con task orders for the design and construction of a laundry facility and the construction of a communications equipment shelter at Camp Edwards, Massachusetts. The contracting officer issued both solicitations using the

---

[1]    *K-Con, Inc.*, ASBCA Nos. 60686, 60687, 17-1 BCA ¶ 36,632, 2017 WL 372992 (Jan. 12, 2017 Board decision); ¶ 36,756, 2017 WL 2267005 (May 8, 2017 Board decision on appellant's motion for reconsideration).

General Services Administration eBuy system using Standard Form 1449, Solicitation/Contract/Order for Commercial Items. Neither solicitation included an express requirement that K-Con provide performance and payment bonds. Nor did the solicitations include FAR clause 52.228-15, Performance and Payment Bonds—Construction, the standard language for performance and payment bonds included in government construction contracts, mirroring the requirements in FAR 28.102-2(b).

In October 2013, the Army instructed K-Con to provide performance and payment bonds in accordance with FAR 28.102-2(b) before the Army could issue its notice to proceed with the contracts. Nearly two years later, in September 2015, K-Con provided the required bonds and the parties modified each contract to compensate K-Con for the cost of the bonding fees. In January 2016, K-Con submitted a request for equitable adjustment ("REA") for each contract, requesting a total of $116.336.56[2] for increases in costs and labor over the two-year period. Subsequently, the contracting officer issued Final Decisions for each contract. The contracting officer determined that the contracts were for construction, and therefore the performance and payment bond requirements were mandatory. The contracting officer further denied both requests on the basis that the bond requirements set forth in FAR 58.228-15 were incorporated into the contracts at the time they were awarded, under the *Christian* doctrine. On appeal, the Board agreed with the contracting officer. K-Con filed a motion for reconsideration, which the Board denied.

K-Con appeals, seeking reversal of the Board's determination. K-Con argues that the contracts were not construction contracts and, alternatively, that the bond

---

[2]   $62,929.02 for the Telecom Hut-D contract and $53,407.54 for the laundry facility contract.

requirements were not incorporated into the contracts by way of the *Christian* doctrine. Based on these arguments, K-Con requests a remand to the Board to determine the amount to be awarded for K-Con's claims. We have jurisdiction under 28 U.S.C. § 1295(a)(10).

## II

### A

K-Con first argues that the Board erred in holding that the contracts at issue are construction contracts. K-Con asserts that they are contracts for commercial items, which do not carry mandatory bonding requirements. The government responds that both contracts are patently ambiguous as to whether they are construction contracts and, thus, it was incumbent on K-Con to inquire as to whether the contracts were for construction or commercial items. Because it did not do so, the government contends that K-Con is precluded from now arguing that the contracts are for commercial items. We agree.

"A patent ambiguity is present when the contract contains facially inconsistent provisions that would place a reasonable contractor on notice and prompt the contractor to rectify the inconsistency by inquiring of the appropriate parties." *Stratos Mobile Networks USA, LLC v. United States*, 213 F.3d 1375, 1381 (Fed. Cir. 2000). This is distinct from a latent ambiguity, which exists when the ambiguity is "neither glaring nor substantial nor patently obvious." *Cmty. Heating & Plumbing Co. v. Kelso*, 987 F.2d 1575, 1579 (Fed. Cir. 1993) (citing *Mountain Home Contractors v. United States*, 425 F.2d 1260, 1264 (Ct. Cl. 1970)). We review de novo both the existence of an ambiguity and whether any ambiguity is patent or latent because they are both issues of law. *Stratos*, 213 F.3d at 1380 (citing *Grumman Data Sys. Corp. v. Dalton*, 88 F.3d 990, 997 (Fed. Cir. 1996)).

We conclude that the contracts were patently ambiguous. On the one hand, as the Army admits, if the contracts had been issued using the standard construction contract form, they would have been construction contracts without any ambiguity. But that is not what happened here. Instead, these contracts issued using the standard commercial items contract form. The line item descriptions even included the phrase "FOB: Destination," which is typically used for commercial items contracts. J.A. 31, 53.

On the other hand, there were many indications that the contracts were for construction, not commercial items. For example, the contract line item descriptions for both contracts, which "identify the supplies or services to be acquired," were for construction activities. *See generally* FAR part 4.10 (establishing uniform use of line items). The communications shelter contract required the contractor to "[c]onstruct Telecom Hut D." J.A. 57. Similarly, in the laundry facility contract, the contract line item number called for "[c]onstruction of a new pre-fabricated metal building." J.A. 31. According to the statement of work in the laundry facility contract, the project scope included "design and construction." J.A. 32. Indeed, the statement of work included many construction-related tasks, including developing and submitting construction plans, obtaining construction permits, and cleaning up construction areas. The statement of work also required compliance with FAR regulations relevant only to construction contracts as well as Davis-Bacon wages,[3] which

---

[3]    Enacted in 1931, the Davis-Bacon Act is intended to protect communities and workers from the economic disruption caused by competition from non-local contractors coming into an area and obtaining federal construction contracts by underbidding local wage levels. The Davis-Bacon Act, as amended, requires that each gov-

are likewise only applicable to construction contracts. The use of the commercial items solicitations form and the construction-related terms of the contracts themselves were facially inconsistent indications that would have placed a reasonable contractor on notice that the contracts are patently ambiguous.

Because the solicitations contained contract language that was patently ambiguous, K-Con cannot argue that its interpretation was proper unless K-Con contemporaneously sought clarification of the language from the Army. *See Grumman*, 88 F.3d at 998 (addressing the issue in the context of a bid protest). K-Con did not seek such clarification and therefore cannot now argue that the contracts should be for commercial items.

## B

We now turn to K-Con's second argument. According to K-Con, even if the contracts were properly considered construction contracts, the Board erred in holding that the contracts included bond requirements under the *Christian* doctrine.

Here, the relevant regulation is FAR 52.228-15, which requires the offeror in construction contracts valued at over $150,000 to furnish performance and payment bonds:

> As prescribed in 28.102-3(a), insert a clause substantially as follows:
>
> > Performance and Payment Bonds — Construction (OCT 2010)

---

ernment contract over $2,000 for the construction, alteration, or repair of public buildings or public works shall contain a clause with the minimum wages to be paid to certain laborers and mechanics employed under the contract. *See* 40 U.S.C. § 3142.

. . .

(b) Amount of required bonds. Unless the resulting contract price is $150,000 or less, the successful offeror *shall furnish performance and payment bonds* to the Contracting Officer as follows:

(1) Performance bonds (Standard Form 25). The penal amount of performance bonds at the time of contract award shall be 100 percent of the original contract price.

(2) Payment Bonds (Standard Form 25-A). The penal amount of payment bonds at the time of contract award shall be 100 percent of the original contract price.

FAR 52.228-15 (emphasis added); *see also* 40 U.S.C. § 3131(b); FAR 28.102-1(a).

Neither contract expressly incorporated this required clause. However, under the *Christian* doctrine, a court may insert a clause into a government contract by operation of law if that clause is required under applicable federal administrative regulations. *See Gen. Eng'g & Mach. Works v. O'Keefe*, 991 F.2d 775, 779 (Fed. Cir. 1993) (citing *Christian I*, 312 F.2d at 424, 427). In *Christian*, the Court of Claims concluded that the standard termination clause required by the Armed Service Procurement Regulations must be read into the contract, even though the contract lacked a termination clause. *Christian I*, 312 F.2d at 424–26. Accordingly, the court denied the contractor's breach-of-contract claim when the government terminated the construction contract for its own convenience. *Id.* at 427. For a court to incorporate a clause into a contract under the *Christian* doctrine, it generally must find (1) that the clause is mandatory; and (2) that it expresses a significant or deeply ingrained

strand of public procurement policy. *See Gen. Eng'g & Mach. Works*, 991 F.2d at 779.

We review the Board's determinations on the applicability of the *Christian* doctrine de novo. *Id.* at 779–80 (applying de novo review to determine whether the *Christian* doctrine incorporated a contract clause regarding material handling costs by operation of law). In applying a de novo review, however, we give "careful consideration and great respect" to the Board's legal interpretations in light of its considerable experience in the field of government contracts, including its experience in interpreting the FAR. *Fruin–Colnon Corp. v. United States*, 912 F.2d 1426, 1429 (Fed. Cir. 1990); *see Titan Corp. v. West*, 129 F.3d 1479, 1481 (Fed. Cir. 1997). We turn now to the two prongs of the *Christian* doctrine analysis.

1

Under the first prong of the *Christian* doctrine, we examine whether the bonding requirements are "mandatory" in government construction contracts. *See Gen. Eng'g & Mach. Works*, 991 F.2d at 779–80. We conclude that they are because they are required by statute.

The statute, 40 U.S.C. §§ 3131–34, formerly known as the Miller Act, requires that "[b]efore any contract of more than $100,000 is awarded for the construction, alteration, or repair of any public building or public work of the Federal Government, a person *must furnish* to the Government [performance and payment] bonds, which become binding when the contract is awarded." 40 U.S.C. §§ 3131(b) (emphasis added). The statute is implemented[4] at FAR 28.102-1: "40 U.S.C. chapter 31, subchapter

---

[4] The regulatory threshold ($150,000) is higher than the statutory threshold ($100,000), because the former was adjusted for inflation. Federal Acquisition Regulation; Inflation Adjustment of Acquisition-Related

III, Bonds (formerly known as the Miller Act), *requires* performance and payment bonds for any construction contract exceeding $150,000." FAR 28.102-1 (emphasis added). In such a circumstance, FAR 28.102-3(a), Contract Clauses, specifies that the clause at FAR 52.228-15, Performance and Payment Bonds—Construction, which is at issue in this appeal, should be inserted in the solicitations and contracts for construction. FAR 28.102-3. Accordingly, because the statute explicitly states that the bonds "must" be furnished and the FAR both requires the bonds and directs insertion of the relevant clause, we conclude that the bond requirements are mandatory.

K-Con argues that FAR 52.228-15 is not mandatory for construction contracts because FAR 28.102-3(a), which requires incorporation of FAR 52.228-15 into construction contracts, purportedly indicates that it is not a mandatory clause. To support its argument, K-Con points to language in FAR 28.102-3(a) stating: "[t]he contracting officer may revise [the performance and payment bonds sections] of the clause to establish a lower percentage." FAR 28.102-3(a). Thus, K-Con argues, the application is based on the exercise of judgment or discretion of the contracting officer, who can waive the bonding requirements. We are not persuaded. That the contracting officer could revise the bond requirements does not change the fact that the bonding requirements are mandatory for construction contracts over $150,000, like the contracts here. Instead, the words "must" and "shall" in the statutory and regulatory language establish that the requirement to furnish performance and payment bonds is mandatory. *Kingdomware Techs., Inc. v. United States*, 136 S. Ct. 1969, 1977 (2016) (stating that "the word 'shall' usually connotes a requirement" and equating "shall"

Thresholds, 75 Fed. Reg. 53,129-01, 2010 WL 3382923 (Aug. 30, 2010).

with "must"). Accordingly, we affirm the Board's conclusion that the bonding requirements are mandatory and satisfy the first prong of the *Christian* doctrine.

2

Under the second prong of the *Christian* doctrine, we examine whether the payment and performance bond requirements "express a significant or deeply ingrained strand of public procurement policy." *See Gen. Eng'g & Mach. Works*, 991 F.2d at 779–80 (discussing *Christian I*, 312 F.2d at 426; *G. L. Christian & Assocs. v. United States* (*Christian II*), 320 F.2d 345, 350–51 (Ct. Cl. 1963)). We conclude that they do.

Payment bonds are intended to provide security for those who furnish labor and materials in the performance of government contracts. *F.D. Rich Co. v. United States ex rel. Indus. Lumber Co.*, 417 U.S. 116, 121 (1974). For private contracts, subcontractors and suppliers can obtain a mechanic's lien against the improved property to ensure that they are paid. *Id.* at 122. Government property, however, cannot be subject to subcontractors' and suppliers' liens. Thus, the payment bonds requirement was created to provide, in government contracts, an alternative remedy to protect those who supply labor or materials to a contractor on a federal project. *See id.* Performance bonds protect the government by ensuring that a contract will be completed with no further cost to the government even if the contractor defaults. *Ins. Co. of the W. v. United States*, 243 F.3d 1367, 1370 (Fed. Cir. 2001).

The Miller Act was enacted in 1935 and re-codified in 2002. *See* Miller Act, 49 Stat. 793 (1935); Revision of Title 40, United States Code, "Public Buildings, Property, and Works," Pub. L. No. 107-217, § 3131, 116 Stat 1062 (2002). Since its enactment, the statute has consistently required performance and payment bonds, even though the contract threshold value for the requirement has increased. *Compare* 49 Stat. 793 (1935) ($2000), *with*

116 Stat. 1062 § 3131 (2002) ($100,000), *with* 40 U.S.C. § 3131 (2006) ($100,000). Indeed, the legislative history reflects that Congress has long sought to protect subcontractors and suppliers and to ensure that the Government receives full performance at the agreed-upon cost, dating back to the 1894 enactment of the Heard Act, which preceded the Miller Act. *See* Miller Act, 49 Stat. at 794 (repealing the Heard Act, 28 Stat. 278 (1894), which was codified at 40 U.S.C. § 270). Based on this long-standing statute and its legislative history, we conclude that the payment and performance bond requirements are "deeply ingrained" in procurement policy. Citing *Grade-Way Construction v. United States*, 7 Cl. Ct. 263, 265 (1985), K-Con nonetheless asserts that, if the bonding requirements were deeply ingrained into procurement policies, the government should have rejected K-Con's bond-less contract bids as nonresponsive. We are not persuaded by K-Con's argument. As an initial matter, we note that *Grade-Way*, a decision from the Claims Court, is not binding authority on this court. Furthermore, *Grade-Way* applies the *Christian* doctrine to minimum wage requirements, not bond requirements. Thus, it has little persuasive force when considering whether the payment and performance bond requirements are "deeply ingrained" in procurement policy.

Moreover, *Grade-Way* is distinguishable on its facts. The issue in *Grade-Way* was whether the lowest bidder's bid was nonresponsive for failing to include a statutorily-required minimum wage provision. The Davis-Bacon Act required the bid to "contain a provision stating the minimum wages to be paid various classes of laborers and mechanics." 40 U.S.C. § 3142. The bid solicitation, by amendment, also specified that solicitations should include a minimum wage provision. The lowest bidder failed to include the statutorily required specific wage schedules in its bid or otherwise acknowledge the amendment containing the modified wage schedules and

rates. The bidder asserted that the missing wage schedules should be read into its bid by operation of the *Christian* doctrine and therefore its bid would still be responsive. The Claims Court concluded that because the solicitation's amendment explicitly included a specific wage requirement, the awardee was required to acknowledge the obligation to pay that specific wage. Because it had not done so, the court found the bid nonresponsive. *Grade-Way*, 7 Cl. Ct. at 271–73. Here, the solicitation did not explicitly require payment or performance bonds, whereas in *Grade-Way*, the bid amendment explicitly set forth the required wage determinations. Accordingly, the situation is not analogous and *Grade-Way* is not on point.

K-Con similarly relies on *Grade-Way* to assert that the *Christian* doctrine is inapplicable because applying it would require K-Con to provide a service that it did not offer. In *Grade-Way*, the Claims Court noted that "application of a doctrine of contract construction developed by the courts, such as the *Christian* Doctrine with respect to incorporation by operation of law, cannot be applied in direct conflict with the clear terms of the statute (and regulations) requiring physical incorporation." *Grade-Way*, 7 Cl. Ct. at 271. But *Grade-Way* is again inapposite. There, the Claims Court declined to apply the *Christian* doctrine because doing so would directly conflict with the clear terms of the statute and regulations. *Grade-Way*, 7 Cl. Ct. at 271. The Federal Circuit, however, rejected this narrow approach in *S.J. Amoroso Construction Co. v. United States*, 12 F.3d 1072, 1075–76 (Fed. Cir. 1993). *S.J. Amoroso* involved the Buy American Act, which required in express terms that every construction contract for public buildings and works "shall contain a provision that in the performance of the work" only American materials would be used. 41 U.S.C. § 8303 (formerly 41 U.S.C. § 10b); *S.J. Amoroso*, 12 F.3d at 1075. Instead of using the corresponding FAR clause for construction

contracts, however, the contract included the FAR clause applicable to a different type of contract. Despite the fact that clear terms of the statute (and regulations) required physical incorporation, we held that the *Christian* doctrine applied and the clause was properly incorporated by operation of law. *S.J. Amoroso*, 12 F.3d at 1077. Here, we follow our precedent in *S.J. Amoroso* and conclude that the payment and performance bond requirements are properly incorporated by operation of law despite the fact that the clear terms of the statute and regulations require physical incorporation.

Finally, K-Con characterizes other *Christian* doctrine cases as applying only to "contract administration-type provision[s]." Appellant Br. at 27. In *Grade-Way*, the court noted:

> The *Christian* doctrine has been applied essentially to clauses involving the government's administration of a contract (such as terminations, changes, and the like), but not to specific terms and specifications. Moreover, the clauses customarily encompassed by that doctrine have contained provision for compensation to the contractor for any increased costs (if not, in all cases, including profits or consequential damages). We know of no authority which would apply the *Christian* doctrine to a situation of this type or which would permit the reading into a solicitation of higher wage determinations (with no [concomitant] increase in the bid price).

*Grade-Way*, 7 Cl. Ct. at 271; *see Gen. Eng'g & Mach. Works*, 991 F.2d at 780 (incorporating payments clause that required separate cost pools); *Chris Berg, Inc. v. United States*, 426 F.2d 314, 317–18 (Ct. Cl. 1970) (holding that missing "mistake in bids" clause required under the Armed Services Procurement Regulation be incorporated into the contract because the clause was written for

the protection of contract bidders); Appellant Br. at 27 (citing *Christian II*, 320 F.2d at 349 (incorporating termination for convenience provision)). Even if we were to accept K-Con's premise that the provisions in other *Christian* doctrine cases are "administration-type provision[s]," we are aware of no case that limits the *Christian* doctrine to such "administration-type" provisions. Indeed, we have applied the *Christian* doctrine to substantive provisions like the one in this case. For example, in *S.J. Amoroso*, we applied the *Christian* doctrine to require, under the Buy American Act, that the contract at issue "contain a provision that in the performance of the work" only American materials will be used. 12 F.3d at 1075–76. Ultimately, we do not find K-Con's arguments persuasive, and we agree with the Board's conclusion that the FAR 52.228-15 bonding requirements express "a significant or deeply ingrained strand of public procurement policy."

## III

We conclude that K-Con is barred from arguing that the contracts at issue are not construction contracts and that, under the *Christian* doctrine, the standard payment and performance bond requirements in construction contracts were incorporated into K-Con's contracts by operation of law at the time the contracts were awarded. We have considered the parties' remaining arguments and find them unpersuasive. We affirm the Board's decision.

**AFFIRMED**

Costs

No costs.