ARMED SERVICES BOARD OF CONTRACT APPEALS

| | | |
|---|---|---|
| Appeals of - | ) | |
| | ) | |
| Allard Nazarian Group, Inc. dba Granite State Manufacturing | ) ) ) | ASBCA Nos. 62413, 62414 |
| | ) | |
| Under Contract Nos. N65540-00-D-0005 | ) | |
| N65540-00-D-0045 | ) | |
| N65540-04-D-0020 | ) | |

APPEARANCES FOR THE APPELLANT:      C. Peter Dungan, Esq.
      Roger V. Abbott, Esq.
        Miles & Stockbridge P.C.
        Washington, D.C.

APPEARANCES FOR THE GOVERNMENT:      Samuel W. Morris, Esq.
        DCMA Chief Trial Attorney
      Debra E. Berg, Esq.
      Ryan S. Johnstone, Esq.
      Evan Georgopoulos, Esq.
        Trial Attorneys
        Defense Contract Management Agency
        Hanscom AFB, MA

OPINION BY ADMINISTRATIVE JUDGE STINSON ON
GOVERNMENT'S PARTIAL MOTION FOR RECONSIDERATION

The government requests partial reconsideration of our July 27, 2023, decision granting partial summary judgment to appellant Allard Nazarian Group, Inc. (Allard), dba Granite State Manufacturing. *Allard Nazarian Grp., Inc. dba Granite State Mfg.*, ASBCA Nos. 62413, 62414, 23-1 BCA ¶ 38,408. Allard appealed two contracting officer final decisions assessing a decrement against fixed hourly labor rate charges incurred on a time and materials basis on various Indefinite Delivery, Indefinite Quantity (IDIQ) contracts. We granted Allard's motion, finding that appellant's alleged failure to submit auditable final indirect cost rate proposals on its time and material contracts did not provide a proper basis for the government to then assess a decrement on Allard's costs for direct labor, which were determined by contractually mandated and agreed upon hourly labor rates. Familiarity with that decision is presumed. For the reasons stated below, the government's motion for partial reconsideration is denied.

DISCUSSION

"Motions for reconsideration do not afford litigants the opportunity to take a 'second bite at the apple' or to advance arguments that properly should have been presented in an earlier proceeding." *Dixon v. Shinseki*, 741 F.3d 1367, 1378 (Fed. Cir. 2014). Reconsideration may be appropriate, however, "if we made mistakes in our findings of fact or conclusions of law, or [failed] to consider an appropriate matter" *Supreme Foodservice GMBH*, ASBCA No. 57884 *et al.*, 20-1 BCA ¶ 37,716 at 183,090 (citation omitted). "[I]f we have made a genuine oversight that affects the outcome of the appeal, we will remedy it." *Relyant, LLC*, ASBCA No. 59809, 18-1 BCA ¶ 37,146 at 180,841.

I. *The Government's Contentions*

The government alleges three errors in our decision:

i.     The Board committed manifest legal error in concluding that FAR 52.216-7, the Allowable Cost and Payment clause within Allard's contracts, and the Government's express remedies provided thereunder, do not apply to all direct costs that the clause required Allard to certify and claim as allowable costs. (*See* Decision at *21-25)

ii.    The Board erred in finding that the Government applied "unilaterally-established final indirect cost rates as a decrement" to Allard's "direct labor hour rates" due to Allard's failure to submit a certified and auditable Incurred Cost Proposal ("ICP"). (*See* Decision at *27-30)

iii.   The Board erred by construing and applying a contract clause implementing regulation, FAR 16.307(a)(1), which is not incorporated in any contract, to negate the explicit terms of the Allowable Cost and Payment clause, FAR 52.216-7, to which Allard had a contractual obligation to comply, but which it breached. (*See* Decision at *20)

(Gov't mot. at 1-2).

2

II. *Government Remedies Under FAR 52.216-7*

The government's first assignment of error is based upon the suggestion that we "committed reversible error" by "concluding that 'FAR 52.216-7(g) does not provide the government the right to recoup prior overpaid amounts where no auditable support is submitted'" (gov't mot. at 4 (internal citations omitted (citing *Allard*, 23-1 BCA ¶ 38,408 at 186,625 (quoting the government's opposition brief to appellant's motion for partial summary judgment (gov't opp'n at 2)))). The government misstates our holding.[1] Regarding the government's reliance upon Federal Acquisition Regulation (FAR) 52.216-7(g), we stated that "[t]he government cites FAR 52.216-7(g) as absolute authority for the contracting officer 'applying these decrements to all billed costs' (gov't opp'n at 2; *see also id.* at 12-13)." *Allard*, 23-1 BCA ¶ 38,408 at 186,625. As we explained, the government had argued that FAR 52.216-7(g) permits "reductions to payments due to the billing of unallowable costs or to recoup prior overpaid amounts where no auditable support is submitted." *Id.* (citing gov't opp'n at 2).

In response to the government's argument, we stated:

> FAR 52.216-7(g) provides the government the right to conduct an audit prior to final payment and to reduce or adjust any such payments determined by the contracting officers to be unallowable costs. FAR 52.216-7(g) does not provide the government the right to "recoup prior overpaid amounts where no auditable support is submitted" (*id.*). Here, the contracting officer's application of a decrement on appellant's direct labor rate costs was not based upon a payment "found by the Contracting Officer not to constitute allowable costs." FAR 52.216-7(g). Rather, the government applied a decrement to appellant's *direct labor rate* costs based upon appellant's alleged failure to submit auditable *indirect cost rate* proposals. FAR 52.216-7(g) does not provide a proper justification, or regulatory authority, for the government's actions taken here.

*Allard*, 23-1 BCA ¶ 38,408 at 186,625.

---

[1] We note that our decision was not based solely upon alleged audit rights granted the government pursuant to FAR 52.216-7. Rather, we found that the plain language of FAR 16.307(a)(1) - the same FAR clause that required us to read FAR 52.216-7 into all four contracts - also "limits the application of FAR 52.216-7 to 'the portion of the contract that provides for reimbursement of materials.'" *Allard*, 23-1 BCA ¶ 38,408 at 186,624 (citing FAR 16.307(a)(1)). We discuss the import and application of this FAR provision in section V below.

FAR 52.216-7(g) could not be more clear, stating, beneath the heading "Audit," that "[a]t any time or times before final payment, the Contracting Officer may have the Contractor's invoices or vouchers and statements of cost audited," and that "[a]ny payment may be (1) [r]educed by amounts found by the Contracting Officer not to constitute allowable costs; or (2) [a]djusted for prior overpayments or underpayments." FAR 52.216-7(g). In its opposition to Allard's motion for partial summary judgment, the government did not allege that its application of the decrement reducing Allard's costs, including its direct, fixed labor costs, was based upon a determination by the contracting officer that such costs were not allowable or a finding of overpayment. *Allard*, 23-1 BCA ¶ 38,408 at 186,626.[2] Instead, the government alleged that it "could not validate, through audit, the number of hours and categories of labor claimed and paid over the course of a contractor's fiscal year" – the premise for the government's argument being that "labor costs under a T&M contract are based on fixed labor rates *multiplied by a variable–i.e. actual time incurred*" (gov't opp'n to app. mpsj at 9; *see Allard*, 23-1 BCA ¶ 38,408 at 186,627). We pointed out that the government cited no specific language in FAR 52.216-7(g) that gave it the right – in its words – to "recoup prior overpaid amounts where no auditable support is submitted" (*Allard*, 23-1 BCA ¶ 38,408 at 186,625). Although the government may have a right of recoupment based upon other regulatory provisions, FAR 52.216-7(g) does not provide the government that authority in the context of these appeals.

In its motion for partial reconsideration, the government asserts, without support, that the contracting officer's authority "to 'reduce' or 'adjust'" costs "is not predicated upon an audit," noting that FAR 52.216-7(g) states "the Contracting Officer <u>may</u> have the Contractor's invoices or vouchers and statements of cost audited" (gov't mot. at 7) (emphasis in original). In essence, the government argues that regardless of whether it conducts an audit, FAR 52.216-7(g) grants the contracting officer the unfettered right to reduce or adjust costs paid the contractor. In its reply brief, the government doubles

---

[2] In its motion for partial reconsideration, the government argues for the first time that appellant's alleged "failure to comply with FAR 52.216-7, by not submitting an auditable ICP, rendered its costs - both indirect and direct labor - unallowable" (gov't mot. at 7 (citing FAR 31.201-2(4) (which we assume is a reference to FAR 31.201-2, Determining allowability, although 31.201-2(4) is apparently an incomplete cite)). The government's having failed to raise this argument in its opposition to appellant's motion for partial summary judgment, we need not consider its argument now. *Assist Consultants Inc.*, ASBCA Nos. 61525, 62090, 21-1 BCA ¶ 37,946 at 184,298-99. On the merits, however, we note that, other than its reference to FAR 31.201-2, the government cites no legal authority for its argument that all of appellant's costs are rendered unallowable because appellant allegedly failed to submit auditable ICPs. FAR 31.201-2 certainly does not expressly support such a sweeping argument, nor does it do so by implication.

4

down on its argument, reading much more into FAR 52.216-7(g) than that clause provides (gov't reply at 3). According to the government,

> the plain language of FAR 52.216-7(g) . . . provides the Government with authority to reduce or decrement prior costs claimed and paid by amounts or methods determined by the ACO based on the best information available to her, and also gives the Government the separate authority to undertake an audit of vouchers or statements of cost at "any time" before final payment.

(*Id.*)

However, the "plain language" of FAR 52.216-7(g) does not support the government's argument. Notwithstanding the government's contrary assertion, FAR 52.216-7(g) does not "provide[] the Government with authority to reduce or decrement prior costs claimed and paid by amounts or methods determined by the ACO based on the best information available to her" (*id.*). Rather, FAR 52.216-7(g) grants the government the right to audit progress payments prior to final payment and reduce or adjust any amounts found to be not allowable or an overpayment. Specifically, FAR 52.216-7(g) states that the contracting officer may conduct an audit of "invoices or vouchers and statements of cost" (which, as set forth in FAR 52.216-7(a)(1), are documents submitted by the contractor "as work progresses"), and, with regard to any such progress payments made based upon those documents, may reduce amounts found "not to constitute allowable costs" or adjust for "prior overpayments." FAR 52.216-7(a)(1), (g). The government's right to reduce or adjust progress payments is tied to the government's right to audit the documents submitted by the contractor in support of its progress payments. The government's interpretation of FAR 52.216-7(g) unreasonably reads out of that FAR clause the concept of conducting an audit – which is the right expressly granted to the government by FAR 52.216-7(g).[3]

The government suggests that "a contractor effectively could avoid a decrement to its costs, direct and indirect, by simply refusing to submit a certified statement of costs, as was the case here, and thereby deprive the Government of its contractual right to audit or validate the existence, accuracy, and allowability of costs, including direct costs" (gov't reply at 4). However, contrary to the government's assertion, that is not the situation

---

[3] The government asserts that FAR 52.216-7(d)(5) and (d)(6) authorize the contracting officer "to recover indirect and direct costs paid in applicable years due to Allard's failure to submit an auditable ICP and its failure to provide supporting documentation for its claimed costs" (gov't mot. at 7). However, FAR 52.216-7(d), as its title "Final indirect cost rates" suggests, addresses the procedures by which the parties finalize indirect cost rates.

presented here. While FAR 52.216-7(g) provides the government the right to "have the Contractor's invoices or vouchers and statements of cost audited," such invoices, vouchers, and statements of costs are documents submitted by the contractor initially to receive payment "as work progresses." FAR 52.216-7(a)(1), (g). In response to appellant's motion for partial summary judgment, the government neither alleged, nor presented factual evidence, supporting a finding that Allard failed to submit with its requests for payment "as work progresses," the requisite invoices, vouchers, or statement of costs.

The government also suggests that "[t]he Decision construes the Allowable Cost and Payment clause to allow a contractor to claim indirect cost rates, without including in the ICP [incurred cost proposal] the costs underlying the contractor's allocation base" (gov't mot. at 6). The government's argument ignores the fact that our decision expressly made "no determination about the propriety of the government's decrement as applied to appellant's indirect costs, as that issue [was] not before the Board for consideration as part of appellant's motion for partial summary judgment." *Allard*, 23-1 BCA ¶ 38,408 at 186,627. According to the government, "the Board's construction of the Allowable Cost and Payment clause would entitle a contractor who uses a 'total cost input' base to *exclude labor hour costs*, reducing the base and hence increasing the rate, even though a total cost input base requires inclusion of labor hour dollars as part of the 'total cost'" (gov't mot. at 6). We disagree. Our decision did not hold that a contractor who utilizes a "total cost input" base may exclude labor hour costs. Rather, our decision addresses the government's improper application of a decrement to Allard's fixed, direct labor, based upon Allard's alleged failure to submit final indirect cost rate proposals, with the government relying upon FAR 52.216-7(g) as support for its actions.

III. *Government Remedies Under FAR 52.232-7*

FAR 52.232-7(a), which was incorporated in all four contracts at issue here (*see Allard*, 23-1 BCA ¶ 38,408 at 186,621), sets forth the manner in which labor costs under time and material contracts are determined and paid. Our decision explained that FAR 52.232-7 "concerns payments under time and material and labor-hour contracts" and provided the government the right to address concerns it had regarding its payments for Allard's direct labor. *Allard*, 23-1 BCA ¶ 38,408 at 186,627.[4] The government's motion for partial reconsideration, however, misconstrues our decision, suggesting that

[4] The government cited no record evidence to support a finding that the government could not audit Allard's direct, fixed labor costs or that records relating to those costs did not exist. Rather, the government argued that Allard's failure to submit an auditable final indirect cost rate proposal was justification alone for imposing a decrement upon all of Allard's costs, including its direct cost. Moreover, the government made no attempt to establish that an audit of Allard's direct costs pursuant to FAR 52.232-7 was impossible.

that we read into FAR 52.232-7(f) "a requirement" that the Government "verify claimed direct labor by reviewing interim vouchers at the time each voucher is submitted" (gov't reply at 5-6) and that FAR 52.232-7(f) only allows the government "validation and adjustment of direct costs at a prescribed time – the time of voucher presentment" (*id.* at 6). Our decision was not so limited. Indeed, we expressly recognized that FAR 52.232-7

> grants the contracting officer the right to request at any time before final payment an 'audit of the invoices or vouchers and substantiating material,' and provides that '[e]ach payment previously made shall be subject to reduction to the extent of amounts, on preceding invoices or vouchers, that are found by the Contracting Officer not to have been properly payable and shall also be subject to reduction for overpayments or to increase for underpayments.'

*Allard*, 23-1 BCA ¶ 38,408 at 186,627 (quoting FAR 52.232-7(e) (DEC 2002)).

The government suggests that because both FAR 52.216-7 and FAR 52.232-7 grant it audit rights prior to final payment, and the fact "that the Government justified its actions by citing to FAR 52.216-7(g) rather than FAR 52.232-7(f) should not be dispositive as the Decision indicates" (gov't reply at 5). Regardless of the competing audit rights set forth in these two clauses, the government here applied a decrement to Allard's fixed, direct labor, based upon Allard's alleged failure to submit final indirect cost rate proposals, citing FAR 52.216-7(g) as support for its actions. As we held in our original decision, and as we have reiterated here, that regulation simply does not provide the government proper authority for its actions. In its reply brief, the government also argues that our decision somehow deemed FAR 52.232-7 "the Government's sole remedy for validating and adjusting a contractor's direct costs" (*id.*). The government's argument overstates our holding. Indeed, nowhere in our decision did we find that FAR 52.232-7 was the government's "sole remedy."

### IV. *Government's Assessment of a Decrement to Allard's Direct Labor*

The government argues that the Board erred in finding that the government applied its unilaterally established final indirect cost rates as a decrement to Allard's direct labor hour rates (gov't mot. at 2) because the government's claim "nowhere stated or represented that the decrement was an 'indirect cost rate decrement'" (*id.* at 8). As support, the government alleges that Allard breached its contract by failing to submit an auditable incurred cost proposal, that "[t]he government could not possibly verify the existence or validity of any of Allard's costs, direct or indirect," and "[t]o mitigate the risk – indeed, high probability – of overpayment, the Government applied a reduction or

7

decrement of either 20 percent or 16.4 percent to 'all **costs** billed and paid' to Allard" (*id.* (citing gov. opp. at 10 (emphasis in original))).

The Board's error, according to the government, was in labeling the decrement a "unilaterally-established final indirect cost rate[]" (gov't mot. at 3) (emphasis omitted).[5] There is no dispute, however, that the government applied its decrement to reduce all of Allard's costs, including *direct labor*, based upon a decrement established by the government and imposed as a means to decrease amounts paid a contractor who failed to submit an *indirect cost rate proposal*. *Allard*, 23-1 BCA ¶ 38,408 at 186,621, 623, 625. Regardless of the label the government places upon it - "a total contract cost decrement" or a "decrement[] based on DCAA's agency wide analysis of recent incurred cost audit experience" (gov't opp'n to app. mpsj at 6, 10) - by applying that decrement to Allard's direct labor, the effect is the same, i.e., the government unilaterally applied a rate meant to rectify the problem of possible overpayments based upon "overdue indirect rate proposals" (*see* R4, tab 11 at G-000154).[6] Simply stated, according to the government, Allard's indirect rates could not be verified so the government applied an agency-wide decrement to all of Allard's contracts – including direct labor portions of those contracts.

The government seems to suggest that the fact the decrement is applied to all contract costs somehow justifies its actions (gov't mot. at 8). It does not. The government offers no proper statutory or regulatory support for its actions (other than FAR 52.216-7(g), which we already have discussed) for applying a decrement to Allard's invoiced, direct labor. The government likewise asserts that its "claim has nothing to do with any decrement, adjustment, challenge, or even questioned fixed labor cost rates in

---

[5] To the extent our previous decision utilizes this terminology, we clarify here, for purposes of our earlier decision, that the government, based upon appellant's alleged failure to submit an indirect cost rate proposal, applied a unilaterally established decrement to Allard's contracts, including Allard's invoiced, direct labor, and not a "'unilaterally-established final indirect cost rate[] as a decrement' to Allard's 'direct labor hour rates'" (gov't mot. at 2). However, this clarification does not change the outcome of our decision in which we granted Allard's motion for partial summary judgment or require us to grant the government's motion for partial reconsideration.

[6] The record contains a DCAA memorandum setting forth "Updated Audit Guidance on the Treatment of Overdue Indirect Rate Proposals" which provides "Support to Unilaterally Establish Contract Costs" and presumably is the document the contracting officer relied upon to impose its decrements here (R4, tab 11 at G-000154; *see also* gov't opp'n to app. mpsj at 2 ("having received DCAA's guidance," the contracting officer "imposed a decrement of 20 percent for FY 2009 and 16 percent for FYs 2010-2014 on all billed amounts")). That document, however, cites no legal authority for "applying a unilateral contract cost decrement" (R4, tab 11 at G-000154).

8

Allard's contracts" (*id.* at 8-9). Therein lies the problem. The government applied its decrement (which is *its* label) to all of Allard's contracts - contracts which included a substantial portion of direct labor - utilizing as justification what amounts to pure speculation, i.e., a "high probability" of overpayment (*id.* at 8).[7] The government did so without providing any "challenge" or basis upon which to have "questioned [Allard's] fixed labor cost rates" (*id.* at 9) other than Allard's alleged failure to submit auditable incurred cost proposals.

Although the government alleged in its opposition to Allard's motion that Allard failed to submit "adequate" or "auditable" ICPs (gov't opp. to app. mpsj at 1, 5, 9), the government did not allege that Allard's actions were a *breach of contract* (gov't mot. at 8-9). The government's motion for reconsideration, however, alleges a breach of contract, stating, for example, that appellant "did not submit its required statement of allowable costs, indirect and direct, for fiscal years ("FYs") 2009 - 2014, nor did it provide the required substantiation for any of its costs billed to the Government for those years," and that appellant's "omissions and inactions breached its contractual obligations" (gov't mot. at 6). The government's allegation of breach is a new argument that the government submitted for the first time in its motion for reconsideration. As such, it is of no relevance here. *CDM Constructors Inc.*, ASBCA No. 62026 *et al.*, 21-1 BCA ¶ 37,833 at 183,723 (arguments not raised in initial briefing are not appropriate bases for reconsideration). The government's argument also is belied by a statement in its opposition to Allard's motion, in which the government recognized that, pre-dispute, Granite State Manufacturing "submitted ICPs, albeit inadequate ones" (gov't opp'n to app. mpsj at 9 n.3). The adequacy of those submissions is not a proper issue to raise for the first time in a motion for reconsideration.

### V. *FAR 16.307(a)(1) is Applicable and Instructive to These Appeals*

Our decision held that "FAR 16.307(a)(1) dictates that FAR 52.216-7 applies 'only to the portion of the contract that provides for reimbursement of materials (as defined in the clause at 52.232-7) at actual cost.'" *Allard*, 23-1 BCA ¶ 38,408 at 186,624-25). The government challenges our holding, arguing that we improperly determined that the plain language of FAR 16.307 limited application of FAR 52.216-7 to the material portion of time and material contracts (gov't mot. at 9). In support of its argument, the government suggests that we "construed and applied FAR 16.307(a)(1), a provision which is not in any Allard contract, to nullify the plain and unambiguous

---

[7] Regarding the government's speculative argument that there was a "high probability – of overpayment" (gov't mot. at 10), we note that the government did not argue in its opposition to Allard's motion for partial summary judgment that there was a "high probability of overpayment" nor did the government offer any record evidence in support of such an assertion.

language of contract clause FAR 52.216-7" which is "a provision contractually binding on both parties" (*id.* at 9-10).

The irony of the government's current position - that our decision improperly relied upon FAR 16.307(a)(1) as a basis for interpreting the reach of FAR 52.216-7 (*id.*) - is that FAR 16.307(a)(1) provided the basis upon which we determined that the contracting officer was required to "insert the clause at 52.216-7, Allowable Cost and Payment, in solicitations and contracts when a cost-reimbursement contract or a time-and-materials contract (other than a contract for a commercial product or commercial service) is contemplated." *Allard*, 23-1 BCA ¶ 38,408 at 186,624. Far from nullifying portions of FAR 52.216-7, FAR 16.307(a)(1) provided the basis upon which we determined, pursuant to the *Christian* doctrine, that FAR 52.216-7 was a mandatory time and materials contract clause as specified in FAR 16.307(a) and "is considered inserted into the contract by operation of law." *Id.*

The government asserts that "[i]n the instant situation, all the contracts at issue include FAR 52.216-7, Allowable Cost and Payment (DEC 2002), which placed an affirmative duty on Allard to provide an ICP adequate for audit within six months following the expiration of each of its fiscal years" (gov't mot. at 5). The government's argument is factually incorrect. As we previously held, only Contract No. N65540-09-D-0009, entered between Allard and the government, included FAR 52.216-7. *Allard*, 23-1 BCA ¶ 38,408 at 186,624. The three previous contracts between the government and Scandia did not. *Id.*[8]

FAR 16.307(a)(1) requires a contracting officer to incorporate FAR 52.216-7 into time and material contracts - but in the manner specified in FAR 16.307(a)(1).[9] As noted by appellant in its opposition brief, "to the extent that FAR 52.216-7(g) authorizes the Agency to apply a decrement to the Contracts, that authority extends only to the material cost portion" (app. opp'n at 11). The government argues that our application of FAR 16.307, a non-contract provision, improperly "negates the explicit terms of"

---

[8] The government's current position is equally confounding given that in its opposition to the Allard's motion for partial summary judgment the government expressly relied "upon FAR 16.307 as part of its argument that FAR 52.216-7 applies to both the time and labor portions of time and materials contracts." Allard, 23-1 BCA ¶ 38,408 at 186,624 n.5 (citing gov't opp'n at 9). Indeed, in its opposition brief, the government stated, "FAR 16.307(a)(1) provides that FAR 52.232-7 and FAR 52.216-7 be included in T&M contracts" (gov't opp'n to app. mpsj at 3).

[9] Indeed, FAR 52.216-7 begins as follows, stating "[a]s prescribed in [FAR] 16.307(a), insert the following clause." FAR 52.216-7. One prescription set forth in FAR 16.307(a) is that FAR 52.216-7 applies "only to the portion of the contract that provides for reimbursement of materials (as defined in the clause at 52.232-7) at actual cost." FAR 16.307(a)(1).

FAR 52.216-7 (gov't reply at 2).[10]  However, it was the explicit terms of FAR 16.307(a) that provided the basis upon which we held that FAR 52.216-7 applies to all of Allard's contracts, and it was the explicit terms of FAR 16.307(a), which also "limit[ed] application of FAR 52.216-7 to 'the portion of the contract that provides for reimbursement of materials.'"  *Allard*, 23-1 BCA ¶ 38,408 at 186,625 (citing FAR 16.307(a)(1)).

The government suggests that reliance upon FAR 16.307 was improper because there was no ambiguity in the contract(s) and, only in the case of an ambiguity, may the Board look to provisions not included in the contract (gov't mot. at 10).  According to the government, the Board "implicitly presumed that the contracts themselves are ambiguous" (*id.* at 11).  We disagree.  Here the contract terms required interpretation, not because of any ambiguity, but because the parties disagreed as to the contract requirements.  The government's argument misunderstands the import of the provisions found in FAR Part 16.  Reliance upon such promulgating provisions is not appropriate *only* when the contract contains an ambiguity that requires resolution, rather, as we stated in our decision, "FAR 16.000 'describes types of contracts that may be used in acquisitions,' and 'prescribes policies and procedures and provides guidance for selecting a contract type appropriate to the circumstances of the acquisition'" *Allard*, 23-1 BCA ¶ 38,408 at 186,624.  FAR 16.000 goes to the heart of determining the specific FAR clauses that a contracting officer is required to include in a contract.

The government cites *K-Con, Inc. v. Secretary of the Army*, 908 F.3d 719 (Fed. Cir. 2018), as support for its argument that the Board committed "clear error" by considering the import of FAR 16.307 and its application to FAR 52.216-7 without a finding that the contracts at issue here were ambiguous (gov't reply at 11).[11]  According to the government, in *K-Con* "the Federal Circuit looked outside the language of the contracts to determine if the bonding requirements should apply only *after* first determining that the terms of the contracts were ambiguous" (gov't mot. at 11) (emphasis in original).  The ambiguity presented in *K-Con* was whether the contracts at issue were for construction or commercial items.  The Federal Circuit found that the contracts were properly considered construction contracts.  The Federal Circuit then considered, given its determination that the contracts were construction, what bonding requirements should

---

[10] We disagree with the government's characterization that FAR 16.307(a)(1) *negates* or *nullifies* explicit or express terms in FAR 52.216-7 (gov't mot. at 9-10; gov't reply at 2).  FAR 16.307(a)(1) does not "negate" or, "nullify" portions of FAR 52.216-7.  Rather, in addition to requiring that the contracting officer insert the clause in certain contracts, FAR 16.307(a)(1) likewise specifies the contract costs to which FAR 52.216-7 applies.

[11] In its opposition to the government's motion for reconsideration, appellant cited *K-Con* in support of its argument that the Board here properly relied upon FAR 16.307 (app. opp. at 10).

apply to those construction contracts. The court applied the *Christian* doctrine to incorporate into the contracts the bonding requirements as a matter of law. Although the Federal Circuit found the contracts ambiguous, the court did not hold that application of the *Christian* doctrine must first be predicated upon a finding that the contract is ambiguous. Rather, the Federal Circuit held that "under the *Christian* doctrine, the standard payment and performance bond requirements in construction contracts were incorporated into K-Con's contracts by operation of law." *K-Con*, 908 F.3d at 728.

## CONCLUSION

For the reasons stated above, the government's motion for reconsideration is denied.

Dated: January 31, 2024

DAVID B. STINSON
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

I concur

OWEN C. WILSON
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

MICHAEL N. O'CONNELL
Administrative Judge
Acting Vice Chairman
Armed Services Board
of Contract Appeals

12

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA Nos. 62413, 62414, Appeals of *Allard Nazarian Group, Inc. dba Granite State Manufacturing*, rendered in conformance with the Board's Charter.

Dated:  January 31, 2024

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals