NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**KORTE CONSTRUCTION CO.,**
*Appellant*

**v.**

**SECRETARY OF THE ARMY,**
*Appellee*

---

2024-2232

---

Appeal from the Armed Services Board of Contract Appeals in No. 63148, Administrative Judge Michael N. O'Connell, Administrative Judge Owen C. Wilson.

---

Decided: April 9, 2026

---

MICHAEL WILSON, UB Greensfelder, LLP, Saint Louis, MO, argued for appellant.

PATRICIA M. MCCARTHY, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for appellee. Also represented by CORINNE ANNE NIOSI, BRETT SHUMATE.

---

Before HUGHES, LINN, and STOLL, *Circuit Judges*.

LINN, *Circuit Judge*.

Korte Construction ("Korte") appeals the decision of the Armed Services Board of Contract Appeals ("Board"), granting summary judgment in favor of the Secretary of the Army ("Army") and awarding a refund to the Army for the cost of chilled water improvements at Tinker Air Force Base that the Board held were required by the contract ("RFP") as awarded but were later unilaterally deleted by the Army. *In re Korte Constr. Co.*, ASBCA No. 63148, 2023 WL 7476103 (Oct. 26, 2023), *on reconsideration*, *In re Korte Constr. Co.*, 2024 WL 2698015 (May 6, 2024). For the following reasons, we affirm.

## BACKGROUND

Beginning with Phase 2 of the RFP and in all subsequent versions, the RFP included the following provision:

> **Extend the base wide chilled water**, hot water, and compressed air **piping to the slab edge of the hangar**. **Provide connection location** for future projects.

J.App'x 1202 (emphasis added). As stipulated by the parties, the government added the requirement to "[p]rovide connection location for future projects" as an amendment. J.App'x 183 (¶ 26). There is no dispute that there was no pre-existing base wide chilled water system to extend at Tinker Air Force Base. J.App'x 195 (¶ 70).

Korte submitted its final Phase 2 proposal on May 31, 2019, which included a confirmation that it was "not proposing any deviations, exceptions or assumptions to the terms or conditions of the Solicitation." J.App'x 7423; J.App'x 185 (¶ 33). Korte's submission included schematic drawings showing the "CW" lines as in the Solicitation. J.App'x 7244, J.App'x 7251. In September 2019, Korte was

awarded the contract for a total of approximately $72.8 million.  J. App'x 185 (¶ 37).

Between September 2020 and February 2021, the Army sought revisions to the contract, initially to install "new utilities valve vault for 14[-inch] chilled water supply and 14[-inch] chilled water return, and changing from three contractually required chilled water lines to two 14[-inch] underground chilled water mains," J.App'x 7962, a modification from its reading of the RFP requiring three 12-inch chilled water lines and a valve vault, and later sought to delete the chilled water lines and valve vault entirely.  The Army sought a credit for the value of the work Korte would no longer need to perform.  Korte refused to award a credit, asserting that the RFP as awarded did not require such improvements.  In April 2021, the Army issued a unilateral modification that deleted the chilled water lines and valve vault and credited the Army with $493,639.43.  J.App'x 194; J.App'x 7265.  Korte thereafter submitted a claim to the contracting officer seeking to rescind the modification.  The contracting officer denied Korte's claim.  He held that the RFP required Korte to build the chilled water improvements, and that if Korte believed that the chilled water improvements were mistakenly included, it had a duty to point out the ambiguity before bidding.  J.App'x 7966.

Korte appealed.  The Board affirmed the contracting officer's decision at summary judgment on two grounds.  First, that it was not reasonable for Korte to simply ignore the requirements in the specification that it knew were ambiguous.  J.App'x 25–30.  Second, because Korte knew about the ambiguity in the contract prior to bidding, it had a duty to inquire, which it did not satisfy, and thus bore the risk of the Army adopting a contrary interpretation.  J.App'x 30–32. On reconsideration, the Board maintained its disposition awarding a refund to the Army.

Korte appeals.

DISCUSSION

I

Despite the somewhat unusual posture of this case, our decision turns entirely on a contract interpretation question: whether the RFP required Korte to install the chilled water improvements, a legal question we review de novo. *Hahnenkamm, LLC v. United States*, 104 F.4th 1333, 1341 (Fed. Cir. 2024); *K-Con, Inc. v. Sec'y of Army*, 908 F.3d 719, 722–23 (Fed. Cir. 2018) (stating that whether an RFP is ambiguous and whether the ambiguity is latent or patent are reviewed de novo). We give the Board's contract interpretation "careful consideration in view of the Board's considerable experience in construing government contracts." *Elec. Boat Corp. v. Sec'y of Navy*, 958 F.3d 1372, 1375 (Fed. Cir. 2020).

Because the Army is seeking a refund for a revision after the contract award, it carries the burden to show that the chilled water improvements were required by the RFP. *Nager Elec. Co. v. United States*, 442 F.2d 936, 946 (Ct. Cl. 1971). We interpret a contract from the perspective of "a reasonable and prudent contractor." *Int'l Tech. Corp. v. Winter*, 523 F.3d 1341, 1349 (Fed. Cir. 2008) (quoting *H.B. Mac, Inc. v. United States*, 153 F.3d 1338, 1345 (Fed. Cir. 1998)).

II

Korte argues that it was impossible to *extend* a base wide chilled water system that did not exist, and therefore any reading requiring satisfaction of that term is unreasonable. *See Seaboard Lumber Co. v. United States*, 308 F.3d 1283, 1294 (Fed. Cir. 2002) (explaining that impossibility of performance may excuse contractor performance). Korte argues that the lack of essential information about the specifications for the pipes and vault confirms that building these improvements was not part of the RFP. Korte also argues that the schematic drawings CU101 and

CG101, which show three small lines labeled "CW" running parallel to the hangar and terminating in unlabeled boxes at either end, cannot require the installation of three 12-inch chilled water lines and a valve vault because the drawings do not show keynotes associated with these components, do not define "CW" in the referenced legends at C-0001 and C-0002 or on the schematic drawings, and show the lines running parallel to the hangar rather than "*to* the slab edge of the hangar" as required by the written specification. Korte further contends the impossible-to-perform text in the specification takes precedence over the drawings under FAR § 52.236-21(a) ("In case of difference between drawings and specifications, the specifications shall govern.").

The Army responds that the only reasonable interpretation of the RFP, when reading the drawings and specification together, requires the installation of chilled water improvements, per the written specification, in the locations shown by the CW lines and valve vault box in the schematic drawings. A reasonably prudent contractor, the Army argues, would have recognized that the CW lines represented chilled water pipes because the schematic drawings refer the contractor to the legends on C-001 and C-002 for definitions of items on the drawings. For example, C-001 defines "—12" CWS1—" and "—12" CWR1—" as "CHILLED WATER SUPPLY" and "CHILLED WATER RETURN," respectively, and C-002 identifies item "—w—w—w—w—" as "water line."

We agree with the Army and the Board that Korte's reading of the RFP not to require an installation of the chilled water improvements is unreasonable and that the proper construction requires the installation. Most importantly, Korte's construction fails to give any meaning to the specification's express call for chilled water piping and, thus, fails to "interpret the contract in a manner that gives meaning to all of its provisions and makes sense." *McAbee*

*Constr., Inc. v. United States*, 97 F.3d 1431, 1435 (Fed. Cir. 1996). The specification unambiguously requires chilled water piping to the slab edge of the hangar and connection locations for future projects.

As the Board correctly held, that the specification calls for that piping to be an extension of a non-existent chilled water system does not excuse Korte's commitment to satisfy the express provisions in the specification due to impossibility. Impossibility discharges a party's obligation to perform "where, *after a contract is made*, a party's performance is made impracticable without his fault by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made." *Seaboard Lumber*, 308 F.3d at 1294 (emphasis added) (quoting *United States v. Winstar Corp.*, 518 U.S. 839, 904 (1996)). Here, there was no occurrence *after* the contract was made. Instead, under Korte's theory, it was the *contract language itself* that rendered its performance impossible. Impossibility does not, therefore, excuse Korte's decision to ignore the demand in the specification and the drawings.

Reading the specification and the drawings together, as we must, *Coast Federal Bank, FSB v. United States*, 323 F.3d 1035, 1038 (Fed. Cir. 2003) ("The Agreement must be considered as a whole and interpreted so as to harmonize and give reasonable meaning to all of its parts."), we agree with the Army that the only reasonable reading of the RFP is to require the chilled water improvements. Korte's attempts to decouple these drawings from the specification therefore must fail. The schematic drawings confirm the requirement for chilled water piping in the specification. The schematics show three lines labeled "—CW—," and we agree with the Army that a reasonably prudent contractor would understand those lines to refer to chilled water piping in light of the definition of the related terms "—12" CWS1—", "—12" CWR1—", and "—w—w—w—w—" in the legends in C-001 and C-002. J.App'x 252–53. These lines

represent the chilled water lines at the edge of the slab called for in the specification.  Similarly, a reasonably prudent contractor would recognize that the chilled water lines terminate in a valve vault, shown as a bold square on CG101 and CU101, in light of the General Sheet Notes requiring "all utility infrastructure to extend past new apron and be capped and/or valved appropriately for future connections," J.App'x 254–55 (capitalization normalized), and the C-001 legend's identification of a similar square as a valve vault, J.App'x 252.  To the extent the drawings are not perfectly clear, the specification also serves to inform the meaning of both the drawings and the legend, which together unambiguously require the installation of the chilled water improvements.

The lack of a keynote in the drawings specifically pointing to the pipes and valve vault is not fatal to the Army's construction.  Korte does not identify any rule or law providing that the contractor may choose not to perform tasks described in the specification and shown on drawings that are not also identified by a keynote.

Korte's multiple other objections to the lack of clarity in the drawings—the absence of an identification of CW lines in the legend, the use of a small font to identify the CW lines, the listing of the CWS1 and CWR1 labels in a legend entitled "existing conditions," and the particular symbol showing the valve vault—similarly fail to read the specification and the drawings together to inform the meaning of the RFP as a whole.

We thus agree with the Board that Korte's reading of the specification was not reasonable.  *See* J.App'x 29 (recognizing that this is not a "situation where both the government and the contractor proffer reasonable interpretations of a contract").  That interpretation therefore cannot control.

III

To the extent there remains any ambiguity about Korte's duty to build the chilled water improvements in the RFP and the particular specifications of the pipes and vault, the parties dispute whether Korte had a duty to inquire about such ambiguities.

Korte argues that the drawings are, at most, latently ambiguous because of the lack of keynote lines, the subtle labeling on the drawings, and the inconsistency between the specification—directing extension of the piping "*to* the slab edge"—and the drawings, which show CW lines parallel to the slab. *See* J.App'x 133–34 (sub-contractor Jarrell testifying that the lines did not stand out to him as depicting CW improvements). According to Korte, none of these features demonstrate the "obvious, gross, [or] glaring" ambiguity required to trigger a contractor's duty to inquire about a patent ambiguity. *See NVT Techs., Inc. v. United States*, 370 F.3d 1153, 1162 (Fed. Cir. 2004) (alteration in original) (quoting *H&M Moving, Inc. v. United States*, 499 F.2d 660, 671 (Ct. Cl. 1974)). Korte's only argument with respect to the written specification itself is that it should be disregarded because of impossibility, as discussed above. Because the RFP is, at most, latently ambiguous, Korte argues that the RFP should be interpreted against the government under contra proferentem. *See HPI/GSA–3C, LLC v. Perry*, 364 F.3d 1327, 1334 (Fed. Cir. 2004) (explaining "general rule is contra proferentem, which requires ambiguities in a document to be resolved against the drafter"). Korte also argues that it did not recognize any ambiguity in the RFP prior to award but only recognized that the RFP did *not* require the chilled water improvements.

The Army responds that Korte repeatedly admitted that it knew about the ambiguity before bidding and, therefore, had a duty to inquire regardless of whether the

ambiguity was latent or patent. *See P.R. Burke Corp. v. United States*, 277 F.3d 1346, 1356 n.3 (Fed. Cir. 2002) ("In order for a contractor to recover based on an ambiguous contract provision, the contractor must have relied on its interpretation of that provision when preparing its bid."); *Edward R. Marden Corp. v. United States*, 803 F.2d 701, 705 (Fed. Cir. 1986) (same); *James A. Mann, Inc. v. United States*, 535 F.2d 51, 61 (Ct. Cl. 1976) ("The question of whether an ambiguity is patent is only relevant where the contractor was not aware of it, and the court is called upon, in retrospect, to decide whether or not he should have been aware of it."). The Army points to several admissions by Korte. First, in its request for a final written decision from the Contracting Officer, Korte said that the requirement to extend the chilled water piping was "obviously the product of a scrivener's mistake—one which was recognized during the development of Korte's pricing," "since there is no base wide chilled water system." J.App'x 7953. Second, Jarrell provided testimony that the RFP provision was "unbiddable and very poorly worded," J.App'x 129–30.

We agree with the Army that Korte had a duty to inquire about ambiguities in the contract both because they were patent and because it knew that its interpretation of the RFP required disregarding the specification and drawings—a paradigmatic patent ambiguity. "A patent ambiguity is present when the contract contains facially inconsistent provisions that would place a reasonable contractor on notice and prompt the contractor to rectify the inconsistency by inquiring of the appropriate parties." *Stratos Mobile Networks USA, LLC v. United States*, 213 F.3d 1375, 1381 (Fed. Cir. 2000). An ambiguity that is "neither glaring nor substantial nor patently obvious" is latent, and the contractor would receive the benefit of its interpretation under contra proferentem. *K-Con*, 908 F.3d at 722 (citation omitted). On appeal, Korte does not argue that it satisfied any extant duty to inquire.

10    KORTE CONSTRUCTION CO. v. SECRETARY OF THE ARMY

The Army is correct that Korte's interpretation of the RFP creates a patent ambiguity because, as discussed above, it requires wholly disregarding an express provision of the RFP and several items in the drawings. But a contractor must satisfy all the provisions in an RFP; it cannot simply ignore a specification by unilaterally making an adjustment based on an understanding that the provision is impossible of performance. *See* FAR 52.236-21(a) ("Any adjustment by the Contractor without such a determination" of a discrepancy in the figures, in the drawings, or in the specifications, "shall be at [the contractor's] own risk and expense.").

Moreover, we agree that Korte admitted that it knew, prior to bidding, that its interpretation would require disregarding the specification and the CW pipes in the drawings. *See* J.App'x 7953; J.App'x 129–30. Korte attempts to argue that it did not know of an ambiguity but merely knew that the RFP did not require the chilled water improvements. Korte Opening Br. at 54 ("What Michael Jarrell did recognize was that the concept drawings did not call for the installation of chilled water improvements . . . because they were not labelled with a legend installation."). This, however, is a distinction without a difference because such an interpretation fails to give meaning to an express provision in the specification and items in the drawings.

## CONCLUSION

We have considered the parties' other arguments but do not find them persuasive. We conclude that the RFP required the chilled water improvements, and therefore the Army has satisfied its burden to show that it was entitled to a refund for the work thereafter deleted from the RFP. Korte has not challenged the amount of the refund award. For the foregoing reasons, we affirm.

**AFFIRMED**